Pleasant Cleveland SWAIN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–192.

Court of Criminal Appeals of Oklahoma.

Dec. 30, 1980.

Robert A. Ravitz, Asst. Public Defender, William R. McKinney, Legal Intern, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., of Oklahoma, Timothy S. Frets, Asst. Atty. Gen., Mary Bryce Leader, Legal Intern, for appellee.

## OPINION

BRETT, Judge:

On February 6, 1978, the Abextra Gift Shop, owned and operated by Bill Borum, was robbed. A man entered the shop, pointed a pistol at Mr. Borum, and stole the cash register receipts and Mr. Borum's wallet. No suspect was apprehended.

On March 6, 1978, Pleasant Cleveland Swain was arrested in Moore, Oklahoma, for the armed robbery of a liquor store in Norman. The subsequent investigation connected Mr. Swain to the Abextra robbery, and he was ultimately convicted of it. He was now appealed that conviction, complaining of both the initial investigation and certain procedural irregularities which allegedly occurred at the trial. We affirm.

### I.

The first four assignments of error relate to the appellant's arrest. He argues, first, that the arresting officer lacked probable cause to stop the car in which he was riding; second, that an illegal search followed the improper stop; third, that the evidence found during the illegal search was the basis for a search warrant which led to the discovery of more evidence; and finally, that the illegal proceedings culminated in his making an incriminating statement. It is urged that the statement and all evidence found should be suppressed.

### A.

■ There was nothing wrong with the initial stop. A Moore police officer, Roger Blackshere, was informed by radio that an armed robbery had been committed in east Norman and told to look for a green Pontiac or Chevrolet sedan with two black men in it. One of the men was described. Shortly thereafter Officer Blackshere saw a green Chrysler occupied by two black men. The officer characterized the behavior of the two men as suspicious: Apparently, when they notice him they quickly turned away, but then the driver repeatedly looked back at him. In addition, the passenger fit the description the officer had been given.

Officer Blackshere followed the car for a few block while his dispatcher checked with the Norman police to see whether the car could have been a Chrysler product instead of a General Motors product. When he received an affirmative answer, the officer stopped the car.

■ The test of a warrantless arrest is whether, at the moment of the arrest, the officer had probable cause to make it: Whether at that moment he had reasonably trustworthy knowledge of facts and circumstances sufficient to warrant the belief of a prudent person that the suspect had committed or was committing a felony. Title 22 O.S.Supp. 1980, § 196. See *Copling v. State*, Okl.Cr., 600 P.2d 353 (1979). Applying this standard to the situation described by the officer compels the conclusion that the stop was a proper one.

### B.

■ Nor was there an illegal search. Officer Gary Whisenhunt, who was Officer Blackshere's backup, testified that when he asked for identification the appellant reached under the passenger side of the car and took out three wallets. One of them belonged to Bill Borum, owner of Abextra. Norman Police Lieutenant Neal Vickers arrived soon after the stop was made. Since the two people in the car were taken into custody by the Norman police, the car was impounded by them, and Lieutenant Vickers inventoried the contents of the car at the scene before transporting it to Norman. Lieutenant Vickers testified that he found the three wallets lying on the front seat of the car.

The appellant challenges the admissibility of the wallet on two bases: He says that Norman Police Lieutenant Vickers conducted a search outside of his jurisdiction, and he urges that the inconsistent testimonies indicate that the officers were creating sto-

ries after the fact in an attempt to justify what they knew to be an illegal search.

Taking these matters in reverse order, this Court finds consistency in the testimonies of the two officers. Officer Whisenhunt saw the appellant take the wallets out from under the front seat of the car, and Officer Vickers found them on the front seat later when he inventoried the contents of the car. Whether the appellant voluntarily gave the wallets to Officer Whisenhunt or whether Officer Vickers secured them during inventory, we find that there was no illegal search.

### C.

Based on the discovery of the wallets, the Norman police obtained a warrant to search the impounded car; in the trunk they found a pistol like the one that had been used to commit the Abextra robbery. Confronted with this evidence, the appellant admitted that he had put the pistol in the trunk.

Working from the assumption that the wallets were the fruit of an illegal search, the appellant contends that the pistol and the statement should have been suppressed. However, the underlying assumption is false, as discussed above; and the appellant's attack on the search warrant and the statement are without foundation.

### II.

After both sides had rested, but before closing arguments had begun, the appellant told the trial court that he wished to discharge his court-appointed counsel and retain an attorney to finish the trial. The court denied this request. The appellant cites *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), in which *Faretta* declared to the trial judge weeks before the trial that he wanted to represent himself without the assistance of an attorney. *Faretta* is clearly distinguishable.

Once counsel has been appointed, valid reasons for his/her discharge and the appointment of new counsel must be demonstrated. Such reasons include demonstrable prejudice by the attorney against his client, incompetence and conflict of interest. *Johnson v. State*, Okl.Cr., 556 P.2d 1285 (1976). A personality conflict involving a disagreement over the conduct of the defense will not justify discharge by the defendant of his attorney. Otherwise, a defendant could delay the trial indefinitely by demanding a new attorney every time the trial is set. The appellant has failed to show that his court-appointed representation resulted in prejudice or that his attorney did not fully protect his rights and interests.

### III.

Finally, it is argued that the trial court erred in allowing the prosecutor to impeach the appellant with his former convictions: one for the armed robbery in Norman which led to his arrest and a second for a 1970 forgery conviction. He claims that a balancing test under 12 O.S.Supp. 1979, § 2609,[1] compels the conclusion that the robbery conviction was too prejudicial to justify its use and that the forgery conviction was too old to be probative.

First, the appellant admitted his prior convictions during direct testimony, which fact justified the prosecutor's use of them. *Zackery v. State*, Okl.Cr., 572 P.2d 580 (1977). In the second place, a balancing test does not compel the conclusion that the armed robbery in Norman was prohibitively prejudicial. Further, the trial court gave an explicit admonition concerning the use of prior convictions. Concerning the forgery conviction, the very statute cited by the defendant, Title 12 O.S.Supp. 1979, § 2609, provides for impeachment with prior convictions which are less than ten years old. The appellant's conviction was eight years old.

1. This case was tried before 12 O.S.Supp. 1979, § 2609, became effective, but the appellant urges this Court to take it as persuasive. In that statute, the Court must determine "that the probative value of admitting this evidence outweighs its prejudicial effect to the detriment of the defendant." Further, Section 2609 places a ten-year limitation on the use of prior convictions.

The judgment and sentence are AFFIRMED.

CORNISH, P. J., and BUSSEY J., concur.