Johnnie Edgar LEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–82–13.

Court of Criminal Appeals of Oklahoma.

March 29, 1983.

Johnie O'Neal, Asst. Public Defender, Tulsa, for appellant.

Jan Eric Cartwright, Atty. Gen., Dena L. Bates, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

The appellant, Johnnie Edgar Lee, was convicted in the District Court of Tulsa County, of Murder in the First Degree for the killing of his wife. He was sentenced to life imprisonment.

Evidence at trial showed that his wife's corpse was discovered at noon, Saturday, November 22, 1980, in a vacant house from which the couple had recently been evicted. The victim, who suffered a contact gunshot wound to her head, was found lying beneath a blanket on the bedroom floor. Police investigating the scene observed what appeared to be a trail of broken automobile glass, blood, and body tissue from the curb outside of the residence into the house.

The police canvassed the neighborhood and learned the appellant and his wife had been seen there together the evening before at about 7:30 p.m. A state medical examiner and forensic pathologist testified he was of the opinion that death occurred within ten to eighteen hours before the victim was found. The appellant's car, which was seized upon his arrest the next day, was bloodstained and had a shattered window on the passenger's side. The blood stains were shown to be of the same type as the victim's. The State also entered into evidence the murder weapon on which blood of the same type was found.

The appellant asserts that the police lacked probable cause to effect his warrantless arrest; that they illegally searched the trailer house at which he was arrested; and, that they illegally seized his automobile. On these grounds he contends that the resulting evidence should have been suppressed.

At the hearing held on his motion to suppress the State presented evidence that the officers, based on evidence at the scene, believed the homicide had taken place in an automobile and that the victim then had been dragged out of the vehicle into the house. They also had information that the appellant and his wife had been seen together in the neighborhood on Friday evening near the time death was estimated by a field medical examiner to have occurred. Additionally, they knew that the appellant had been previously convicted for the shooting death of his prior wife. All of these facts and circumstances, the arresting officer knew before the arrest. Initially the officers sought to arrest the appellant as a material witness; however, as they approached the trailer house they saw the appellant's car with its broken window and what appeared to be blood stains. This observation, made from a place where the officers had a lawful right to be, corroborated their theory of how the homicide occurred and established probable cause.

■ The appellant attacks the existence of probable cause on the basis that there was conflicting testimony at the suppression hearing on whether Lily Mae Owens had told Detective McMichael on Saturday that her grandson, Tony, had seen the Lees in the neighborhood the night before at 7:30. We first observe that a police officer may arrest a person without a warrant upon facts communicated to him by others. *Howell v. State,* 530 P.2d 1371 (Okl. Cr.1975). Second, reception of hearsay evidence at a suppression hearing is not infirm under 12 O.S.1981, § 2103(B)(1), which provides that the rules of evidence do not apply, except those that relate to privileges, where the judge is to determine questions of fact preliminary to admissibility of evidence. For an excellent discussion on this point, see *United States v. Matlock,* 415 U.S. 164, 173–175, 94 S.Ct. 988, 994–995, 39 L.Ed.2d 242 (1974). And third, this Court will not reverse a trial court upon findings of fact in connection with a motion to suppress where there is competent evidence in

the record reasonably tending to support its findings. *Mahan v. State,* 508 P.2d 703 (Okl.Cr.1973).

■ The test of a valid warrantless arrest is whether, at the moment of the arrest, the officer had probable cause to make it, i.e., whether at that moment he had reasonably trustworthy knowledge of facts and circumstances sufficient to warrant the belief of a prudent person that the suspect had committed or was committing a felony. *Swain v. State,* 621 P.2d 1181 (Okl. Cr.1980). This Court has also held that the term "probable cause" imports that there may not be absolute irrefutable cause. *Reynolds v. State,* 575 P.2d 628 (Okl.Cr. 1978). We are of the opinion that probable cause did exist in the instant case under this test.

On the morning of the arrest the officers had learned from an informant that the appellant could be found in the informant's trailer house. Within forty-five minutes the police arrived there, ordered the appellant to step outside, and arrested him. At the suppression hearing the State presented hearsay testimony that the police had been given consent to search the trailer house, asserting the owner's privilege from testifying by reason of his status as a confidential informant. A police officer also testified that the owner had signed a consent to search form; however, in his haste to immediately apprehend the suspect before he had a chance to flee, the officer had failed to fill out all of the blanks on the form.

■ The appellant contends that this was insufficient evidence of consent to search. Again during another pre-trial motion hearing, the State presented testimony that the informant had been advised of his rights prior to agreeing to the search and that he gave his consent voluntarily.

In an analogous situation, the Supreme Court refused to compel disclosure of a confidential informant's identity in every preliminary hearing to determine probable cause for an arrest or search, where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust. *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62, *reh. denied,* 386 U.S. 1042, 87 S.Ct. 1474, 18 L.Ed.2d 616 (1967). The Court held that "[n]othing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury." As in *McCray,* the arresting officers relying on the informant's consent, testified in open court, in detail as to what the informant had told them. Each officer was under oath and subject to searching cross-examination. The judge was obviously satisfied that each was telling the truth, and for that reason he exercised the discretion conferred upon him under 12 O.S.1981, § 2105, to respect the informant's privilege.

We recognize that the State has the burden to establish the legal sufficiency of voluntary consent. However, as a factual matter to be resolved by the lower court, and supported by the evidence, the determination will not be disturbed. See *Mahan, supra.*

■ The appellant also challenges existence of exigent circumstances arguing that his warrantless arrest was not justified because the police had ample time to secure a warrant beforehand. In support, the appellant relies on *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), in which the Supreme Court stated that except where there is consent or exigent circumstances, entry into a home to conduct a search or to make an arrest is unreasonable under the Fourth Amendment unless done pursuant to a warrant. Here both exceptions were triggered.[1]

■ The record reflects that the arresting officers, having probable cause to arrest the appellant for the felony which had only

---

1. Even had the appellant established he shared some sort of possessory interest with the inhabitant of the trailer house, he would have assumed the risk that the other might permit the dwelling to be searched. See *United States v. Matlock,* 415 U.S. at 171, n. 7, 94 S.Ct. at 993 n. 7.

recently been committed, acted immediately after receiving information of the appellant's whereabouts to effect his arrest. The facts that the police reasonably believed the suspect was armed and dangerous and likely to flee if not swiftly apprehended, that evidence of the crime could be easily destroyed, and that there had been no inordinate delay in which a warrant could have been obtained, justified the immediate arrest. We therefore find that an emergency situation existed which supported the warrantless arrest under 22 O.S.1981, § 196. See *Faulkner v. State,* 646 P.2d 1304 (Okl. Cr.1982).

The appellant next takes the position that despite any lawful entry the police had no legal right to seize his coat, which had in its pocket a .45 caliber semi-automatic revolver. He contends there was no reason to believe that the coat was evidence of the crime, and that therefore the search of its pocket, revealing the weapon, was tainted. He advances that since he was already outside the trailer house under the control and custody of the arresting officers, a warrant to search the coat, should have been secured, citing *United States v. Chadwick,* 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977).

At the preliminary hearing, which was incorporated by reference in the suppression hearing, Officer Cox testified that after he had advised Lee of his *Miranda* rights, he asked where the gun was. As Lee told him it was in his coat pocket, Corporal Morrow, overhearing the conversation from the front room of the trailer house, contemporaneously picked up a coat lying on the divan. Cox yelled to him the gun was in the coat pocket; Morrow then looked to see that it was there and then removed it. The weapon was loaded and cocked.

■ It is sufficiently clear that the police had consent to enter and to search the trailer house. The fundamental inquiry in considering Fourth Amendment issues is whether or not a search or seizure is reasonable under all of the circumstances. *Cooper v. California,* 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). The focus of the Fourth Amendment is on privacy rather than on property rights. E.g., *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ The appellant, as a guest, assumed the risk that his host might consent to a search. See *United States v. Matlock,* supra. Having a valid consent to search, the police did not invade any reasonable expectation of privacy by merely picking up the coat. Hearing the appellant state that the gun was in the coat pocket, the officer, with coat in hand, had probable cause to believe that it contained a weapon likely to be loaded. His own safety, as well as the safety of the other officers inside the trailer house, required that the weapon be secured to insure it would not discharge. Under these circumstances we cannot hold that the police were required to carry the coat to the police headquarters without first removing the weapon and disarming it. This is in accordance with a warrant exception delineated in *Chadwick,* at 433 U.S. 15, n. 9, 97 S.Ct. 2485, n. 9, in which the Supreme Court stated:

> Of course, there may be other justifications for a warrantless search of luggage taken from a suspect at the time of his arrest; for example, if officers have reason to believe that luggage contains some immediately dangerous instrumentality, such as explosives, it would be foolhardy to transport it to the station house without opening the luggage and disarming the weapon. See *e.g. United States v. Johnson,* 467 F.2d 630, 639 (CA 1972). 433 U.S. 1, 15, n. 9, 97 S.Ct. 2476, 2485, n. 9.

We therefore find that the warrantless seizure of the weapon, which was grounded on probable cause and effected under exigent circumstances, i.e., the potential danger of discharge, was reasonable under the Fourth Amendment. After the weapon had been disarmed and transported to police headquarters, a warrant was issued to enable chemical and ballistic analysis, as required by *Chadwick.* See also, *United States v. Isom,* 588 F.2d 858, 861 (2nd Cir. 1978).

■ The appellant next complains of the warrantless seizure of his car at the time of his arrest. As the officers approached the trailer house, they immediately noticed that the appellant's car parked in the driveway, had a broken passenger-side window and that the car appeared to be stained with blood. This observation of evidence was made in plain view from a place in which the officers had a lawful right to be, and did not constitute a search. See *Reynolds v. State,* supra. It is established that the constitutional guaranty against unlawful search and seizure does not prevent seizure of evidence logically tending to prove elements of the offense charged where that evidence is not concealed but in open view. *Battles v. State,* 459 P.2d 623 (Okl.Cr.1969).

■ The seizure was not only incident to arrest, but the initial intrusion onto the private property was grounded on valid consent to search the premises. That the officers knew in advance that the appellant's car would be at the trailer house does not vitiate the "inadvertence" requirement of the plain view doctrine, for although the police suspected that *a* car was involved in the crime, they did not have probable cause as to the appellant's car until they observed it. See *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As we stated in *Blackburn v. State,* 575 P.2d 638 (Okl.Cr.1978), the point of the inadvertence requirement is that if law enforcement officials know in advance what they are going to find, they then should obtain a search warrant.

■ The nature of the situation was such that it was not feasible for the law enforcement officials to take the time required to secure either an arrest or search warrant, as to do so might have resulted in the escape of the suspect, or in the loss or destruction of evidence. It was later shown at trial that it was raining at the time the car was seized, a circumstance indicating the exigency of impending loss or destruction of evidence by the effect of rain washing away blood stains. This circumstance supported the decision to impound the car immediately rather than to post a guard at the car while awaiting issuance of a warrant. Given the circumstances, the requisites of *Coolidge* for a warrantless seizure were met. Furthermore, the car was not actually searched until after its impoundment when a search warrant was issued.

The appellant also challenges the validity of the warrant issued to search his car, contending that the supporting affidavit alleged insufficient facts to establish probable cause. The principal attack is on the veracity of the information contained in the affidavit. The argument that the affidavit was dependent upon fruits of an illegal arrest need not be addressed in light of the disposition of the arrest issue.

■ At the suppression hearing, the defense presented testimony contradicting the State's evidence that Lilly Mae Owens had told a police detective on Saturday, November 22, that her grandson had seen the Lee's in the neighborhood the night before. The Supreme Court, in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), held that when the defense challenges a sworn statement used by the police to secure a warrant and a hearing is warranted, the defense must establish by a preponderance of the evidence its allegation of the affiant's perjury or reckless disregard of the truth in procuring a warrant. If that burden is met, then the affidavit's false material is set aside and the remaining content is examined to determine if it is sufficient to establish probable cause. Where it does not, the search warrant must be voided and its fruits excluded. 438 U.S. at 155–156, 98 S.Ct. at 2676–2677.

■ Whether the defense prevails on this issue depends on the factual determination made by the district court as trier of fact. The rule of exclusion extends only to instances of deliberate misstatements and those of reckless disregard. As the Supreme Court stated, the "*truthful* showing" required to comprise probable cause "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be

founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." The Court went on to state, "But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." 438 U.S. at 164–165, 98 S.Ct. at 2681. Impeachment is allowed only where the challenged statements were those of the affiant, *i.d.* at 171, 98 S.Ct. at 2684; therefore, where the misstatements were not within the personal knowledge of the affiant, they do not go to the integrity of the warrant. *Id.* at 163, 98 S.Ct. at 2680.

■ Here the lower court's ruling in favor of the State was supported by competent evidence, including testimony of the affiant that the facts he had related in the affidavit were true to the best of his knowledge. Further, the information regarding the Lee's presence in the neighborhood was supplied to the affiant by a fellow officer and was not within the affiant's personal knowledge, a factor which leaves the integrity of the warrant unimpugned.

■ The appellant's additional argument that the affidavit failed to reflect the confidential informant's reliability is without merit since the affidavit makes no mention of any information derived from the confidential informant.

· The appellant next urges the trial court erred in failing to suppress statements he made following his arrest. He contends that prior to delivering the *Miranda* warnings, Officer Cox asked him if he knew why he was being arrested, to which he responded by nodding his head in the affirmative. At trial, Cox testified, "I asked Mr. Lee if he knew what he was under arrest for and he shook his head yes and I read him his constitutional rights, which is the *Miranda* warning." [2]

■ Unless law enforcement officers give certain specified warnings before questioning a person in custody, and follow certain specified procedures during the course of any subsequent interrogation, any statement made by the person in custody cannot over his objection, be admitted in evidence against him as a defendant at trial, even though the statement may in fact be wholly voluntary. *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).

■ In *Reynolds v. State,* supra, 575 P.2d at 635, we held that the defendant there had waived any objection and had not preserved the alleged error for review where he had failed to object to the sufficiency of the foundation presented by the State regarding the giving of the *Miranda* rights. We find this holding to be applicable here, especially since rather than objecting to the testimony, the defense expanded on the evidence during closing argument and asked the jury to make the "logical" assumption that the appellant knew why he was being arrested because he had heard about the murder of his wife. In so arguing, the appellant likewise waived and cured any error regarding the prosecutor's argument on this same issue, to which a timely objection also was not made. See *Wells v. State,* 559 P.2d 445 (Okl.Cr.1977).

■ The appellant additionally complains that the prosecutor improperly commented on his failure to testify. However, a reading of the record shows that the remark was instead a permissible comment on failure to call a certain witness. In *Wright v. State,* 531 P.2d 696 (Okl.Cr.1975), this Court held that the failure to produce a person who might be a material witness is a legitimate matter for comment during argument. We therefore find no error.

■ The appellant next argues that gruesome photographic slides were improperly admitted to his prejudice. After examination of the exhibits, we are of the opinion that their probative value outweighed any prejudicial effect, satisfying the test for admissibility of photographic evidence

---

**2.** In addition to the claim that Officer Cox's questioning violated *Miranda,* the appellant contends that his "statement" was the product of an illegal arrest; an issue which is effectively disposed of by the determination that the arrest was legal.

as cited in *Assadollah v. State,* 632 P.2d 1215 (Okl.Cr.1981). The exhibits here depicted the entrance and size of the bullet wound and showed powder burns indicating the murder weapon was fired at point blank range. This tended to corroborate the testimony that the gun seized from the appellant had blood stains in its barrel, and to illustrate the medical examiner's testimony. We therefore find no abuse of discretion by the trial court in admitting these exhibits. See, *Irvin v. State,* 617 P.2d 588 (Okl.Cr. 1980).

■■■■ We further find no merit in the argument that the trial court erred in failing to grant the defense's motion for a directed verdict at the close of the State's case. In substance, a motion for directed verdict admits facts the evidence tends to prove. Where there is any competent evidence reasonably tending to sustain the allegations of the charge, the trial court should not sustain a motion for directed verdict. *Morris v. State,* 607 P.2d 1187 (Okl.Cr.1980). And, as here, where the appellant complains of insufficient evidence, we look to the entire record. *Maynard v. State,* 625 P.2d 111 (Okl.Cr.1981). We find that after such a review, the jury had before it sufficient competent evidence, although circumstantial, from which it could reasonably determine the guilt of the appellant. As the law of circumstantial evidence was correctly instructed upon, we will not interfere with the verdict as it is within the exclusive province of the jury to weigh the evidence and to determine the facts.

The appellant next urges error in the reception of testimony given by Dr. Hemphill, a forensic pathologist and medical examiner, who gave his opinion as to the caliber of the bullet which caused the death. He based his opinion on the diameter of the hole in the skull produced by the bullet. The appellant asserts that the witness thereby testified on matters beyond his expertise. He also argues that an investigating officer should not have been allowed to testify that in his opinion the trail of dark spots on the carpet where the victim was found were blood stains; and that a State

chemist should not have been allowed to state that the small pieces of broken glass which she had examined were possibly safety glass. The appellant complains also that one of the officers should not have been permitted to testify whether .45 caliber automatics are more commonly found than .41 and .44 caliber weapons.

■■■■ We find that due to the forensic pathologist's practice and experience he was a competent witness to testify as to his opinion of the size of the bullet, based on his measurement of the bullet hole in the skull. This did not constitute testimony concerning a matter beyond his expertise, but rather was an area in which he had professional experience. Moreover, the defense waived this issue for review by specifically asking the forensic pathologist what kind of weapon could have caused the wound. See *Smith v. State,* 431 P.2d 949 (Okl.Cr.1967).

■■■■ As to the testimony regarding the stains, we have held that an ordinary witness may testify that certain marks, spots or discolorations observed by him were, in his opinion, blood stains. *Cherry v. State,* 518 P.2d 324 (Okl.Cr.1974). Nor do we find error in reception of the chemist's testimony that due to the fact the glass she examined had broken into small pieces rather than large pieces she believed it to be safety glass. We do not consider this statement to have required more knowledge than that which is commonly possessed by any layperson who is aware of the properties of safety glass. Cf. *Breshers v. State,* 572 P.2d 561 (Okl.Cr.1977) (testimony allowed since anyone versed in use of firearms could have given the testimony). Such testimony was incidental to her expert analysis of the tissue and blood fragments found on the glass and was permissible under 12 O.S.1981, § 2701, which allows opinion testimony by lay witnesses which is rationally based on the perception of the witness and is helpful in the determination of a fact in issue. Simply because the witness was testifying in the capacity of an expert chemist should not preclude her from rendering such testimony. The argu-

ment regarding the police testimony is without merit since the defense counsel previously opened-up the area by asking if .44 and .45 caliber pistols were common.

On June 8, 1982, the appellant filed a pro se supplemental brief prior to the effective date of 22 O.S.1982 Supp., ch. 18, App.Rule 3.4(E), which provides that any pro se legal arguments shall be submitted by the appellant to his attorney of record for submission to this Court. We therefore have considered the allegations of error raised in the pro se brief, and having found them to be either repetitive with the original brief or without merit, we decline to discuss them.

The judgment and sentence is AF-FIRMED.

BUSSEY, P.J., specially concurring.

BRETT, J., concurs in result.

BUSSEY, Presiding Judge, specially concurring:

I concur finding no error which requires modification or reversal.