Robert Denny CAMREN, Appellant,

v.

STATE of Oklahoma, Appellee.

No. F-87-880.

Court of Criminal Appeals of Oklahoma.

July 15, 1991.

Gloyd L. McCoy, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen., Wellon B. Poe, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

LANE, Presiding Judge:

Robert Denny Camren was tried by jury and convicted of False Impersonation After Former Conviction of a Felony (21 O.S.1981, § 1531(4)) in McIntosh County District Court, Case No. CRF–87–47. The jury recommended the minimum punishment, ten (10) years imprisonment, and the trial court sentenced accordingly. On appeal appellant argues he did not commit a crime, the evidence was insufficient to convict him, the trial court improperly instructed the jury, and the sentence is excessive. We find no error and affirm the judgment and sentence.

This case arises from a traffic stop. Robert Denny Camren was stopped by McIntosh County Deputy Sheriff Alvin McGee as he drove 60 mph in a 40 mph zone. He told McGee his name was Billy Gene Camren and he didn't have his license with him. Billy Gene was Camren's brother who had been dead for three years. McGee conducted a radio check and discovered Billy Gene's license had been expired for a year. McGee ticketed Camren for driving on an expired license. Camren signed the ticket "Billy Gene Camren". After discovering Billy Gene was dead, McGee arrested Camren for false impersonation.

■ Appellant first argues his actions do not constitute a crime under 21 O.S.1981, § 1531(4). This statute defines the crime appellant was charged with as follows:

Every person who falsely personates another, and in such assumed character:

. . . . .

(4) Does any other act whereby, if it were done by the person falsely personated, he might in any event become liable to any suit or prosecution, or to pay any sum of money, or to incur any charge, forfeiture or penalty, or whereby any benefit might accrue to the party personating, or to any other person . . .

Deputy Sheriff McGee testified the appellant told him he gave the wrong name because he was afraid. When appellant took the stand he testified he used the false name so that he would avoid getting a ticket because that would jeopardize getting his own suspended driver's license back. The plain language of the statute covers these facts. The appellant falsely personated his dead brother in order to gain the benefit of being able to reclaim his own suspended driver's license.

■ We are not persuaded by the appellant's argument that in the context of the entire statute "any benefit" must refer to "money or property or other type of contractual or relationship-type right". (Brief at 8). Subsection 4 plainly refers to becoming liable to any lawsuit or prosecution or any charge as well as accruing any benefit. The statutory construction appellant urges us to adopt is not supported by its plain language. We find the appellant was properly charged.

■ Approaching the same general argument from a different direction the appellant next argues the State presented insufficient evidence to prove he impersonated his dead brother for some benefit. Deputy Sheriff McGee testified the appellant told him he was afraid, but he did not know what he was afraid of. Later appellant testified and explained why he gave the deputy sheriff the wrong name:

Well, my driver's license means a lot you know, mean a lot to me; I don't know if I stated my name I wouldn't get a chance to get my license, because I got one more ticket I wouldn't be able to get my license to drive back and forth to work.

The benefit the appellant hoped to get was the return of his driver's license. The evidence is sufficient for any rational trier of

fact to find this element of the crime. *See Spuehler v. State,* 709 P.2d 202 (Okl.Cr. 1985).

Appellant claims the Deputy Sheriff's testimony should have been suppressed because the appellant's statement to him was the fruit of an illegal arrest. The Assistant Attorney General apparently chose not to respond to this argument for the State's brief ignores it.

■ Appellant filed a Motion to Suppress all his statements on the basis his arrest was illegal. On appeal he argues his arrest was illegal for it was made in his home, at night, without a warrant.

■ Warrantless arrests are authorized by statute. 22 O.S.1981, § 187. A warrantless arrest may be accomplished in a person's home when it is consensual, or required by certain exigent circumstances. *See Lee v. State,* 661 P.2d 1345 (Okl.Cr. 1983); *Fowler v. State,* 779 P.2d 580 (Okl. Cr.1989) *cert. denied,* —— U.S. ——, 110 S.Ct. 1537, 108 L.Ed.2d 775 (1990). In the present case the appellant was in his mother's home and she gave Deputy Sheriff McGee permission to enter it. The entry was therefore consensual and did not require a warrant.

■ Appellant continues this argument by asserting his uncorroborated confession is the only evidence of his commission of this crime. Again the Assistant Attorney General fails to respond to the appellant's argument. Appellant signed the ticket "Billy Gene Camren". This signature is substantial independent evidence of the crime. It establishes the trustworthiness of the appellant's statement to Deputy Sheriff McGee that he was afraid, and his own testimony as to why he was afraid. Appellant's statements are sufficiently corroborated. *See Jones v. State,* 555 P.2d 63 (Okl.Cr.1976).

■ The State sought enhanced punishment and charged the appellant "after former conviction" pursuant to the Habitual Criminal Act. 21 O.S.1981, § 51. At trial the appellant took the stand and admitted a former conviction. At the close of his case he requested a verdict form which would allow the jury to find him guilty of False Personation without former felony conviction. The trial court refused to give the jury this verdict form. The appellant asserts the trial judge improperly took the issue of his former conviction from the jury.

The law on this point in this jurisdiction is well established. When a criminal defendant admits to a former conviction at trial, no question of fact regarding the existence of the former conviction remains for the jury to decide. *Shepard v. State,* 756 P.2d 597 (Okl.Cr.1988); *Thomas v. State,* 741 P.2d 482 (Okl.Cr.1987); *Carter v. State,* 725 P.2d 873 (Okl.Cr.1986). We find no error here.

■ Appellant received a sentence of 10 years imprisonment for giving the wrong name to the deputy sheriff when he was stopped for a traffic violation. Three years were suspended by the trial judge. Appellant argues this sentence is excessive.

On its face the sentence initially seems extreme in light of the fact that false impersonation is a non-violent, victimless crime. The background facts add poignancy to this appeal. At the time he was stopped the appellant was driving his mother to a funeral home to make arrangements for the funeral of his nephew's wife and four children who had burned to death in their trailer.

The pre-sentence report creates a different picture. Appellant admitted to four prior felony convictions, two for possession of marijuana and two for attempted grand larceny prior to 1980. At the time of the pre-sentence investigation appellant had charges pending in Oklahoma County for distribution of a controlled dangerous substance and concealing stolen property. When he was arrested on these charges he gave the officer a false name. Due to his prior felony convictions the appellant was ineligible for a suspended sentence or 120 day judicial review.

The appellant received less than the minimum ten year sentence set forth by 21 O.S.Supp.1985, § 51, for the trial court suspended three years of the sentence. Under

the circumstances, this sentence which is less than the statutory minimum does not shock the conscience of the court, and is affirmed. *See Virgin v. State,* 792 P.2d 1186 (Okl.Cr.1990); *Dunagan v. State,* 755 P.2d 102 (Okl.Cr.1988); *Collins v. State,* 751 P.2d 200 (Okl.Cr.1988).

BRETT and JOHNSON, JJ., concur.

LUMPKIN, V.P.J., concurring in result.

PARKS, J., specially concurring.

PARKS, Judge, specially concurring:

I write separately to reiterate my disagreement with the majority's position regarding a defendant's admission of prior convictions. As I stated in my separate opinion in *Hanson v. State,* 716 P.2d 688, 690 (Okl.Cr.1986), the decision of whether to find a defendant guilty of former convictions should rest within the province of the jury. However, as a matter of *stare decisis,* I yield to the result reached by the majority.