2004 OK CIV APP 73

**TANIQUE, INC., an Oklahoma corporation, and Rob Collins, Plaintiffs/Appellants,**

v.

**STATE of Oklahoma, ex rel. OKLAHOMA BUREAU OF NARCOTICS AND DANGEROUS DRUGS, Defendant/Appellee.**

**No. 99,091.**

Court of Civil Appeals of Oklahoma, Division No. 2.

Aug. 31, 2004.

Michael Gassaway, Oklahoma City, OK, for Appellants.

Mark Lane, Oklahoma City, OK, for Appellee.

Opinion by JOHN F. REIF, Presiding Judge.

¶ 1 This appeal arises from a suit in which Tanique, Inc., and its employee, Rob Collins, allege that state law enforcement agents violated the plaintiffs' civil rights and committed various torts in obtaining and serving a search warrant for the business premises of Tanique, Inc. The plaintiffs' claims were largely based on (1) alleged falsehoods in the affidavit for search warrant, (2) alleged false statements made by the agents to customers of Tanique, Inc., and the news media concerning the products seized from the business premises of Tanique, Inc., and (3) alleged false statements that Mr. Collins was an "owner" of Tanique, Inc. Plaintiffs admit that the products named in the search warrant were on the business premises and were seized along with twenty-three, 100–count bottles of ephedrine tablets, a precursor controlled substance.

¶ 2 The district attorney charged Mr. Collins alone. In the course of the criminal proceeding, Mr. Collins moved to suppress the evidence obtained in executing the search warrant on the basis of alleged falsehoods in the affidavit for search warrant. However, Mr. Collins did not pursue this challenge to the warrant and, instead, accepted a plea bargain. He pled *nolo contendere* to a misdemeanor charge relating to the ephedrine that was openly displayed on the business premises. Mr. Collins did not appeal the judgment and sentence entered on the *nolo contendere* plea, nor seek habeas corpus relief to invalidate the conviction for the alleged falsehoods in the affidavit for search warrant.

¶ 3 Citing Mr. Collins' failure to pursue direct remedies of appeal or habeas corpus to invalidate his conviction, the State of Oklahoma sought a partial summary adjudication on his civil rights claim to the extent it was based on alleged falsehoods in the affidavit for search warrant. Citing *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994), the State argued that an action based on 42 U.S.C. § 1983 does not lie, if it would constitute a collateral attack on a final conviction. The trial court agreed and granted the State's request for partial summary adjudication in this regard.

¶ 4 Thereafter, the State sought a second summary adjudication that it was immune from liability for any civil rights claims by either Tanique, Inc., or Mr. Collins, as well as for the particular tort claims pled. In response to this request for summary adjudication both Tanique, Inc., and Mr. Collins conceded that the State was immune from liability on the civil rights claims, but argued that material issues of fact precluded summary adjudication of the tort claims. The

trial court granted summary adjudication in favor of the State on both the civil rights claims and the tort claims. This appeal followed.

¶ 5 In their petition in error, Tanique, Inc., and Mr. Collins set forth only two issues for review on appeal:

1. Whether trial court erred in granting Summary Judgment on Plaintiff's cause of action grounded upon 42 U.S.C. § 1983.

2. Whether the trial court erred in granting the Defendant's Motion for Summary Judgment on all "state" causes of action when many substantive facts were in dispute.

We understand the first issue to refer to the first summary adjudication that foreclosed Mr. Collins from proceeding under § 1983 to the extent that such an action would amount to a collateral attack on the validity of his conviction. We understand the second issue to refer to the second summary adjudication finding that the State had immunity on the tort causes of action pled.

## I.

■ ¶ 6 We find it unnecessary to decide the first issue because it deals with an interlocutory order that ruled Mr. Collins could not assert a civil rights claim against the State of Oklahoma as a collateral attack on the validity of his conviction. Any question about the correctness of this interlocutory order became moot when Tanique, Inc., and Mr. Collins (1) represented to the trial court that "only [their] Fifth Cause of Action is one predicated upon civil rights violations" and (2) conceded that "their Fifth Cause of Action against the State of Oklahoma should be dismissed."

## II.

¶ 7 To decide the second issue concerning the propriety of the summary judgment dismissal of plaintiffs' tort causes of action, we must examine each cause of action. The propriety of the summary judgment dismissal of a particular cause of action will depend upon whether the cause of action as pled constitutes a cognizable wrong and, if so, whether the State is liable for such a wrong

under the Governmental Tort Claims Act, 51 O.S.2001 §§ 151 through 200.

¶ 8 The "First Cause of Action" was asserted by both plaintiffs. No particular wrong or cognizable tort was identified in the caption of the "First Cause of Action." However, in their response to the State's second motion for summary adjudication, the plaintiffs stated, "the First Cause of Action is predicated in Fraud not Civil Rights Violations." Plaintiffs characterized the wrong as "fraud upon the court."

¶ 9 The second and fourth claims for relief were asserted by Rob Collins only, and seek damages for intentional infliction of emotional distress, defamation and false light publicity. The third claim for relief was asserted by Tanique, Inc., and sought damages for tortious interference with contract. The sixth claim for relief was asserted by both plaintiffs and alleged civil conspiracy. As previously noted, the plaintiffs agreed to the dismissal of their fifth claim for relief alleging civil rights violations.

¶ 10 Review of these claims reveals that each asserts liability against the State of Oklahoma and the John Doe Agents individually. However, only the liability of the State of Oklahoma is at issue on appeal in light of the plaintiffs' failure to name and serve any individual agents prior to the summary judgment below and the dismissal of the John Doe agents from this suit at the initial stages of this appeal.

¶ 11 The case of *Fehring v. State Insurance Fund*, 2001 OK 11, ¶ 23, 19 P.3d 276, 283, addressed the scope of liability of the State of Oklahoma under the Governmental Tort Claims Act for torts by state employees. The court noted that the Governmental Tort Claims Act affirmed the State's sovereign immunity and waives such immunity only to the extent and in the manner provided in the Act. The court further observed that the legislature had expressly provided that the state shall *not* be *liable* for any act or omission of an employee acting *outside the scope of employment*. Under the Act, to be within the scope of employment, an employee must be acting *in good faith*. *Id.*

¶ 12 The Oklahoma Supreme Court concluded that the State incurs liability only when State employees are acting in good faith and retains immunity on a tort claim "when, in order to prevail on the particular tort claim sued upon, a plaintiff is **required, as a matter of law,** to show conduct on the part of a governmental employee that would mandate a determination the employee **was not** acting in good faith." *Id.* (citations omitted). The court further explained "that when, for viability, the tort cause of action sued upon requires proof of an element that necessarily exclude[d] good faith conduct on the part of governmental employees, there can be no liability against the governmental entity." *Id.* (citation omitted). The court went on to note that tort causes of action that have malice or recklessness as an essential element are not viable tort claims against the State. In particular, liability does not lie against the State for alleged intentional infliction of emotional distress.

### A.

¶ 13 The text of the "First Cause of Action" avers that the State agents "swarmed the location of Tanique, Inc., ... pursuant to a search warrant obtained as a result of false testimony ... creating a cause of action against the Defendants pursuant to *Franks v. Delaware.*"[1] The text also avers that the affiant falsely reported the presence of a controlled substance in a product the agent purchased from Tanique, Inc., without fully advising that the controlled substance can convert from a non-controlled substance ingredient in certain liquid matrices. The text further complains about the agent communicating alleged unreliable information or hearsay to connect another product to Tanique, Inc. According to the affidavit, this other product was given to the agent by the parents of an individual who said he bought the product at Tanique, Inc. The text similarly complains about the affiant not disclosing that the test report for this product also indicated that the controlled substance present in the product can convert from a non-controlled substance ingredient.

¶ 14 Having reviewed the summary judgment record and applicable law, we conclude that the trial court properly granted summary judgment in favor of the State of Oklahoma on plaintiffs' first cause of action for a number of reasons. We first note that *Franks v. Delaware* did not create or recognize a civil cause of action for falsehoods in an affidavit for search warrant, as plaintiffs contend. We have found no federal case that creates or recognizes a civil cause of action for falsehoods in an affidavit for search warrant independent of a suit under § 1983. Likewise, we have found no case from any jurisdiction that recognizes a civil cause of action for "fraud on the court" for falsehoods in an affidavit for search warrant.

¶ 15 If we assume *arguendo* that the affidavit for search warrant herein did contain falsehoods, the legal wrong that is committed is perjury. It has long been recognized in Oklahoma that perjury encompasses false statements in "an affidavit made to be used in a judicial proceeding, where the statements contained in such affidavit might influence the tribunal or officer before whom the matter is pending, or where it may work an injury to the party against whom it is directed." *Arnold v. State,* 1913 OK CR 381, 48 Okla.Crim. 452, 132 P. 1123 (syllabus 1). Significantly, the Oklahoma Court of Criminal Appeals has referred to falsehoods in an affidavit for search warrant as "perjury." *Lee v. State,* 1983 OK CR 41, ¶ 23, 661 P.2d 1345, 1352.

¶ 16 The Oklahoma Supreme Court has squarely held that "no civil cause of action for perjury exists in Oklahoma." *Cooper v. Parker–Hughey,* 1995 OK 35, ¶ 27, 894 P.2d 1096, 1101. In this same case, the Oklahoma Supreme Court made it clear that statutory provisions defining fraud and deceit do not create a right of action for perjury. *Id.* at ¶ 21, 894 P.2d at 1100. The Court stressed that "[t]he tort of fraud or deceit provides a remedy [only] to a person who suffers damages due to his reliance upon another's willful misstatement of fact [and] one [who] testifies falsely ... is practicing deceit upon ... the judicial system." *Id.* In

---

1. 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

the case of an affidavit for search warrant that contains falsehoods, the magistrate who relies on the falsehoods is the one that is deceived, and not the party against whom the warrant is sought. While plaintiffs correctly characterize falsehoods in an affidavit for search warrant as "fraud on the court," they are wrong in maintaining that they can prosecute a tort claim for such a legal wrong.

¶ 17 Oklahoma law does recognize a civil action for damages from causing the issuance and service of a search warrant, maliciously and without probable cause. *Williams v. Frey,* 1938 OK 280, 182 Okla. 556, 78 P.2d 1052. To maintain such an action, however, one must have standing to challenge the search. While Tanique, Inc., clearly has standing to challenge the search of its business premises and the seizure of its products and records, *Oklahoma Publishing Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946), Mr. Collins, an admitted employee, does not have standing to question the search of his corporate employer's business premises. *Love v. State,* 1947 OK CR ——, 83 Okla.Crim. 403, 177 P.2d 846; *State v. Worrell,* 233 Kan. 968, 666 P.2d 703 (1983); *U.S. v. Anderson,* 154 F.3d 1225, 1230 (10th Cir.1992) (citation omitted) ("[A] corporate employee does not have standing to challenge the search of corporate offices or other property merely because the employee has access to or control over certain areas."). The summary judgment was clearly proper on this cause of action as far as Mr. Collins was concerned.

¶ 18 To prevail on a claim for wrongful search and seizure, the plaintiff must demonstrate the absence of probable cause in securing a search warrant and failure to do so "is fatal to the plaintiff's case." *Williams,* 1938 OK 280, ¶ 7, 78 P.2d at 1054 (citation omitted). The *Williams* case observes that, "Where the material facts on the issue are undisputed, the question of probable cause is entirely for the court's determination." *Id.* at ¶ 0, 78 P.2d at 1053 (syllabus 3).

¶ 19 The *Williams* case also observes that, "It is well settled that the term 'probable cause' does not mean actual or positive cause, for the determination of the question

whether the person causing the warrant to issue had probable cause to believe the party guilty is, on its face, a different question from the question whether the party was actually guilty." *Id.* at ¶ 8, 78 P.2d at 1054. "Ordinarily, if the facts and circumstances known to the person causing the warrant to issue are such as to justify a man of prudence and caution in believing that the offense has been committed, [probable cause] is sufficient." *Id.* (citations omitted).

¶ 20 As for the accuracy of the information presented, the Oklahoma Court of Criminal Appeals has stated that "the *truthful* showing required to comprise probable cause does not mean truthful in the sense that every fact recited in the warrant affidavit is necessarily correct." *Lee v. State,* 1983 OK CR 41, ¶ 24, 661 P.2d 1345, 1352 (internal quotation marks omitted) (quoting *Franks v. Delaware,* 438 U.S. 154, 164–65, 98 S.Ct. 2674, 2681, 57 L.Ed.2d 667 (1978)). "Probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily." *Id.,* 661 P.2d at 1352–53. The court further observed that probable cause "is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* (citation omitted).

¶ 21 Applying these standards to the summary judgment record at hand, we hold as a matter of law that the search warrant for the business premises of Tanique, Inc., was supported by *probable cause to believe* the products named in the search warrant contained a controlled dangerous substance, and *probable cause to believe* similar products were kept for sale at the business premises of Tanique, Inc. We reach this conclusion because a copy of the affidavit for search warrant and copies of the lab reports are among the undisputed evidentiary materials in the record presented.

¶ 22 Tanique, Inc., has basically asserted that the agent/affiant misled the issuing magistrate by failing to advise the magistrate that the controlled substance found in the products in question was converted from a

non-controlled ingredient by the chemist testing the product in liquid matrices. However, the lab reports tell a different story. The lab report for each product similarly states:

**Analysis of Evidence:**

Gamma-butyrolactone, a non controlled substance, and Gammahydroxybuterate, Schedule I were identified in this item; however, research has shown that Gamma-butyrolactone, a non-controlled substance can convert to Gammahydroxybuterate in certain liquid matrices.

The lab reports do not state or even suggest that the chemist caused the conversion of the non-controlled substance into the controlled substance in the course of the analysis. The lab reports state that "research has shown" that such conversion can take place.

¶ 23 The notation about the ability of the non-controlled substance to convert to the controlled substance simply informs the agent who submitted the product for testing that the presence of the controlled substance could have resulted from a naturally occurring conversion of the non-controlled substance ingredient given the liquid medium of the product. That is, the presence of the controlled substance in the product could have been the result of an unintended chemical reaction as opposed to being added by the manufacturer or the party selling the product.

¶ 24 Whether the controlled substance in the product was due to a naturally occurring conversion of the non-controlled substance ingredient, or was present from being added by the manufacturer or retailer, the product when tested showed the presence of a controlled dangerous substance and was subject to seizure for that reason. Even if the agent had informed the magistrate of the presence of the non-controlled substance or the possibility of conversion, the product would still be subject to seizure. Accordingly, it was not "exculpatory" or even material that both the non-controlled substance and the controlled substance were present when tested, or that the controlled substance could have been the result of a chemical reaction.

¶ 25 As for probable cause to believe that the products in question were at the business premises of Tanique, Inc., the agent/affiant's statement that he personally purchased one type of product at the business premises of Tanique, Inc., was sufficient to support a warrant to search for that type of product. Concerning the other product, the agent's statement that he obtained the product from parents of an individual who said he bought the product at Tanique, Inc., is likewise sufficient to lead a reasonably prudent person to conclude Tanique, Inc., sold that product. Although this involves hearsay, it is the type of hearsay that people share and rely on in everyday life in making decisions where to shop for a particular product. Businesses universally value and encourage word-of-mouth advertising that they carry particular products. It is difficult to believe Tanique, Inc., would be any different given the fact that Tanique, Inc., has maintained that these were legally manufactured products that other businesses carried as well. More importantly, Tanique, Inc., admits it carried the products in question.

¶ 26 In reviewing the record, we do not find falsehoods, deceit, concealment, misstatement, manipulation of information or any other wrongdoing by the agent/affiant that would render the affidavit and search warrant invalid or defective. Rather than an absence of probable cause, we find sufficient "truthful" probable cause. Given Tanique, Inc.'s, inability to establish an essential element of the only cognizable theory of recovery encompassed in the "First Cause of Action," summary judgment was properly granted in favor of the State of Oklahoma on the "First Cause of Action." *Manley v. Brown*, 1999 OK 79, ¶¶ 24–28, 989 P.2d 448, 456–57.

## B.

¶ 27 The "Second Claim for Relief" asserted by Rob Collins only avers that the State through its John Doe agents and other officers "did engage in extreme acts of misconduct [that included] falsely asserting that Plaintiff, Rob Collins, was the owner of the premises and that he was responsible for having controlled dangerous substances on the premises." The claim further states

"[t]hese acts by the Defendant, State of Oklahoma, and/or its agents, were so outrageous and extreme as to exceed all bounds of what is tolerated in a civilized community [and were] done with the express intent [to] cause Plaintiff to suffer severe emotional distress." Based on the principles set forth in *Fehring,* this is not a viable cause of action against the State and, therefore, summary judgment was properly granted to the State on this claim for relief. *See also McMullen v. City of Del City,* 1996 OK CIV APP 46, 920 P.2d 528.

¶ 28 The fourth claim for relief asserted by Rob Collins only avers that "the Defendants herein perpetrated defamatory remarks about the Plaintiff, committed libel, slander and portrayed him in a false light." These wrongs were based on statements by the agents to "the press, the public, and the users of Tanique, Inc., that Rob Collins owned the premises, was dealing dope and controlled substances from the premises and that the substances seized were illegal."

■ ¶ 29 In reviewing the wrongs asserted in this claim for relief, Rob Collins is a private figure, and not a public official or public figure. "In order to recover for defamation [either libel or slander], a private figure must prove (1) a false and defamatory statement, (2) an unprivileged publication to a third party, (3) fault amounting at least to negligence on the part of the publisher; and (4) either the actionability of the statement irrespective of special damage [per se], or the existence of special damage [per quod]." *Mitchell v. Griffin Television, L.L.C.,* 2002 OK CIV APP 115, ¶ 5, 60 P.3d 1058, 1061 (citation omitted).

■ ¶ 30 The fact that such a claim is sustainable where the person publishing the statement is simply negligent in ascertaining the truth of the statement supports Mr. Collins' contention that he has a viable claim against the State. However, the legislature provided a specific exemption from liability for an employee's "[m]isrepresentation, if unintentional." 51 O.S.2001 § 155(17). The summary judgment record reflects that the agent who referred to Mr. Collins as an "owner" of Tanique, Inc., based that statement on information provided by the Oklahoma Tax Commission. If such a statement

can be regarded as a misrepresentation, it was clearly unintentional, as it was based upon misinformation from a public source. As a matter of law, the State has no liability for Mr. Collins' claim based on defamation.

■ ¶ 31 "In order to recover for false light invasion of privacy, the plaintiff must show (1) the defendant gave publicity to a matter concerning the plaintiff that placed the plaintiff before the public in a false light, (2) the false light in which the plaintiff was placed would be highly offensive to a reasonable person, and (3) the defendant had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Mitchell,* 2002 OK CIV APP 115, ¶ 7, 60 P.3d at 1061 (citation omitted). The Oklahoma Supreme Court has explained that the third element—the defendant must have knowledge of or act in reckless disregard as to the falsity of the publicized matter or the attendant false light—"is the equivalent of ... actual malice [and] must be proven with convincing clarity by showing that the defendant had a high degree of awareness of probable falsity or in fact entertained serious doubts as to the truth of the publication." *Colbert v. World Pub. Co.,* 1987 OK 116, ¶ 15, 747 P.2d 286, 291 (footnote omitted). The Supreme Court has further stated "the right of action for false light invasion of privacy is a product of the same societal need as the tort of outrage or intentional infliction of emotional distress, which will lie only in the presence of extreme and outrageous conduct." *Id.* at ¶ 16, 747 P.2d at 292 (footnote omitted).

■■ ¶ 32 Clearly, the culpable conduct that is required to sustain a claim for false light invasion of privacy is comparable to malice and recklessness. Under *Fehring,* 2001 OK 11, ¶ 23, 19 P.3d at 283, such conduct is inconsistent with good faith and state employees who engage in such conduct would be outside the scope of their employment. As a matter of law, the State has no liability for Mr. Collins' claim of false light invasion of privacy.

## C.

¶ 33 The "Third Claim for Relief" was asserted by Tanique, Inc., alone and alleged Tortious Interference with Contract as the basis for recovery in the caption. The text of the claim discloses that Tanique, Inc., was claiming injury to its business by the release of "false, defamatory and untrue" information about the substances found on its business premises to customers of Tanique, Inc., and the general public. In addition, Tanique, Inc., generally alleged "unjustified, non-privileged, and unexcused interference with the contracts Tanique had with its customers" and specifically averred "the Defendants herein maliciously interfered with [Tanique's] business, inducing members and users of Tanique, Inc., to break their contracts ... and never return because of [the Defendant's statements about] the unsavory and illegal nature of Tanique, Inc.'s business."

¶ 34 This third claim sufficiently alleges legal wrongs for defamation, *Continental Casualty Co. v. Southwestern Bell Telephone Co.*, 860 F.2d 970 (10th Cir.1988), and interference with contract or business relations, *Mac Adjustment, Inc. v. Property Loss Research Bureau*, 1979 OK 41, 595 P.2d 427. However, based on the summary judgment record, we find that the State has no liability for alleged statements about the products that were seized by the officers, because the officers had probable cause to believe the products contained a controlled dangerous substance and they were executing a search warrant that authorized seizure of the products. The agents were entitled to rely on the designation and description of the products set forth in the search warrant when asking patrons of Tanique, Inc., to leave while they served the warrant, and to explain to the news media why they were serving a search warrant.

¶ 35 In order to recover on a cause of action for malicious interference with contract or business relations, a plaintiff must show:

1. That he or she had a business or contractual right that was interfered with.
2. That the interference was malicious and wrongful, and that such interference was neither justified, privileged nor excusable.

3. That damage was proximately sustained as a result of the complained-of interference.

*Mac Adjustment, Inc.*, 1979 OK 41, ¶ 5, 595 P.2d at 428. In *Mac Adjustment*, the Oklahoma Supreme Court reversed a judgment on a jury verdict, because the plaintiff "failed to show that there was any malicious intent or malice on the part of [the defendant.]" *Id.* at ¶ 6, 595 P.2d at 428.

¶ 36 Clearly, malice is an essential element of a cause of action for interference with business or contractual rights and, under *Fehring*, is not a viable cause of action against the State. Accordingly, summary judgment was properly granted to the State on the Third Claim for Relief asserted by Tanique, Inc.

## D.

¶ 37 The caption of the "Sixth Claim for Relief" indicates that this claim is based on "Civil Conspiracy." It is asserted by both Tanique, Inc., and Mr. Collins and avers that "[t]he officers, agents and/or employees of the Oklahoma Bureau of Dangerous Drugs and Narcotics [*sic*], including the individual Defendants and others unknown to the Plaintiff but known to the Defendants, conspired with and are continuing to conspire to injure Plaintiffs [by committing the wrongs previously set out in the petition] in order to create a media frenzie [*sic*] and as much publicity as possible to justify their existence and budgetary needs." Other than claiming the officers acted "under color of law and authority of their offices," and a prayer for judgment against "the Defendants," no specific basis is given to impose liability on the State of Oklahoma for this "civil conspiracy."

¶ 38 It is well settled that "[c]ivil conspiracy itself does not create liability." *Roberson v. PaineWebber, Inc.*, 1999 OK CIV APP 17, ¶ 21, 998 P.2d 193, 201. "A conspiracy between two or more persons to injure another is not enough; *an underlying unlawful act is necessary* to prevail on a civil conspiracy claim." *Id.* (citation omitted) (emphasis added). It is also well settled that a governmental entity "cannot conspire with itself." *Brasier v. City of Tulsa*, 268 F.2d 558, 559 (10th Cir.1959).

¶ 39 In order for the State of Oklahoma to be liable for a "civil conspiracy" committed by State employees acting within the scope of their employment, it is necessary that the State be liable on the "underlying unlawful act[s]" alleged by the plaintiffs. As previously discussed, the State does not have liability on any of the "underlying unlawful act[s]" alleged by Tanique, Inc., or Rob Collins. Accordingly, the State of Oklahoma has no liability for the "civil conspiracy" alleged in "The Sixth Claim for Relief," and summary judgment was properly granted to the State of Oklahoma on this claim.

### III.

¶ 40 In reviewing the record presented, this court has formed the impression that the manufacturer of the products in question did not intend for the products to contain a controlled substance, nor did Tanique, Inc., and Rob Collins. However, it appears that the non-controlled substance ingredient undergoes a conversion in the liquid medium of the product and the controlled substance is formed by an unintended, naturally occurring chemical reaction. While the manufacturer and Tanique, Inc., may have unsuspectedly marketed a product with an unintended controlled dangerous substance by-product, the fact remains that there was probable cause to believe the products in question contained a controlled substance, subjecting them to seizure.

¶ 41 While inviting news media coverage of the execution of the search warrant reflects poorly on the professionalism of the officers, it did not in itself involve a legal wrong. We find nothing that the officers did in the procurement and execution of the search warrant, or the arrest and prosecution of Mr. Collins, that gives rise to liability on the part of the State of Oklahoma. Accordingly, the summary judgment in favor of the State of Oklahoma on all of the tort claims asserted by Tanique, Inc., or Mr. Collins or both is AFFIRMED.

COLBERT, C.J., and STUBBLEFIELD, J. (sitting by designation), concur.