Richard T. CLARK and Joel
C. Holt, Plaintiffs,

v.

Herbert TABIN, an individual, and
Gary Schultheis, an individual,
Defendants.

No. 03–CV–289–TCK–SAJ.

United States District Court,
N.D. Oklahoma.

Aug. 26, 2005.

Ada L Mitrani, Mark Francis Conley, Mark Conley Law Ofc, Tulsa, OK, Charles Michael Copeland, James E Weger, Adam Jeremy Strange, John William Cannon, Jones Gotcher & Bogan, Tulsa, OK, for Richard T Clark, Plaintiff.

Heather Leanne Cupp, Terrance Lane Wilson, Hall Estill Hardwick Gable Golden & Nelson (Tulsa), Tulsa, OK, Jennifer K Van Zant, Brooks Pierce McLendon Humphrey & Leonard LLP, Greensboro, NC, Glenn Reuben Davis, Boone Smith Davis Hurst & Dickman, Tulsa, OK, Garry Michael Gaskins, II, Charles Greenough, Boone Smith Davis Hurst & Dickman, Tulsa, OK, for OnSpan Networking, Inc. a Nevada Corporation, Gary Schultheis, Defendants.

## ORDER

KERN, District Judge.

On August 26, 2005, Magistrate Judge Joyner filed his Report and Recommendation (Dkt. No. 207). Therein, the Magistrate Judge recommended the Court deny Defendant's Motion to Dismiss Defendant Schultheis for lack of personal jurisdiction.(Dkt. No. 153).

Now before the Court is the Defendant Schultheis' Objection to Magistrate Judge's Report and Recommendation (Dkt. No. 209). Pursuant to FED. R. CIV. P. 72(b), the Court has reviewed the record *de novo* and after thorough consideration of both it and Defendant Schultheis' objection, finds no reason either in law or in fact to depart from the recommendation of Magistrate Judge Joyner.

It is therefore the ORDER of the Court, that Defendant Schultheis' Objection to Magistrate Judge's Report and Recommendation (Dkt. No. 209) is OVERRULED.

It is the further ORDER of the Court that the Report and Recommendation (Dkt. No. 207) is affirmed and adopted as the Order of the Court.

## REPORT AND RECOMMENDATION

JOYNER, United States Magistrate Judge.

The District Judge referred Defendant's motion to dismiss Defendant Gary Schultheis for lack of personal jurisdiction to the undersigned for Report and Recommendation. Defendant asserts that Defendant Schultheis lacks minimum contacts with Oklahoma and should be dismissed under Fed.R.Civ.P. 12(b)(2). Plaintiffs maintain that Defendant Schultheis has sufficient minimum contacts for personal jurisdiction, and additionally, personal jurisdiction exists based on the conspiracy theory of jurisdiction. The Magistrate Judge recommends that the District Court **DENY** Defendant's motion to dismiss Defendant Schultheis for lack of personal jurisdiction. [Docket No. 153–1].

## I. BACKGROUND AND PROCEDURAL HISTORY

Defendant Gary Schultheis ("Schultheis") requests that the Court dismiss the action against him because the Court lacks personal jurisdiction. Defendant alleges that Schultheis lacks the necessary minimum contacts required for personal jurisdiction under Oklahoma's Long–Arm Statute. Defendant maintains that Schultheis lacks the continuous and systematic contact with Oklahoma necessary for general personal jurisdiction, and that the Court does not have specific personal jurisdiction over Schultheis because Schultheis did not purposefully direct activities to Oklahoma out of which the present litigation arose.

Plaintiffs maintain that sufficient minimum contacts exist for the Court to exercise personal jurisdiction over Schultheis. Plaintiffs assert that Schultheis hired an Oklahoma attorney to represent him from 1997 until 2001 in various business transactions and investments, including some businesses in Oklahoma. Plaintiffs allege that from 1998 through 2001 Schultheis was in "almost every other day" contact with G. David Gordon, his attorney, regarding businesses and transactions, some in Oklahoma. Plaintiffs note that Gordon hired Schultheis to perform public relations work during the time period from 1996 through 1998 for a company located in Tulsa, Oklahoma, Struthers Industries, Inc. Plaintiffs allege that Gordon, an Oklahoma attorney, incorporated many of Plaintiffs' businesses, some of which (Universal Funding) had their principal place of business in Oklahoma. Plaintiffs assert that Schultheis and Tabin are the sole owners of Universal Funding which at one time listed its corporate offices in Tulsa, Oklahoma, and that many of the business records were maintained in Tulsa, Oklahoma until 2002. Gordon notes that he was the escrow agent for the stock purchase transaction in July 2000 for Millennium Holdings Group, Inc., which is solely owned by Schultheis and Tabin. The trust account was held at a bank in Tulsa, Oklahoma. Plaintiffs assert that on March 31, 2005, G. David Gordon sued Schultheis in Tulsa County District Court alleging that Schultheis had initiated contacts with individuals in Oklahoma and directed his activities toward Oklahoma. Plaintiffs attach the complaint filed in Tulsa County District Court which references telephone calls made by Schultheis and Holt. Plaintiffs also note that in the Tulsa County District Court action the plaintiff in that action alleges that he conducted business with Schultheis beginning in 2000 in a company named Vertical Computer Systems, Inc., and that common stock was held in an escrow account in Oklahoma. Plaintiffs allege that between 1998 and 2000, Schultheis and Tabin contacted Plaintiff Clark with regard to investing in six different companies. Plaintiffs allege that Schultheis met with Gordon and another attorney in Tulsa on two different occasions in regard to a SEC investigation. Plaintiffs allege that Schultheis attended a party at Clark's home in July 1999. Plaintiffs allege that Schultheis and Tabin were in Tulsa for a board meeting of International Internet Inc. in 2000, and that Schultheis was also in Tulsa in 1998 to conduct business with regard to a company controlled by Tabin.

Plaintiffs additionally allege that Schultheis contacted Mr. Clark by telephone conference in Oklahoma and solicited Mr. Clark's investment in OnSpan. Plaintiffs also allege that Schultheis met with Mr. Clark in the Bahamas and made certain promises to Mr. Clark with regard to the operation of OnSpan in Oklahoma. Plaintiffs additionally maintain that during three of Schultheis' visits to Oklahoma, Schultheis and Mr. Clark discussed OnSpan or the business idea which later became OnSpan.

## II. DISCUSSION

### A. The Court Has Personal Jurisdiction Over Defendant Schultheis

The United States Supreme Court has held that individuals have a liberty interest, protected by the due process clause, in not being haled into court in a forum with which the individual has established no meaningful contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). In a diversity action the federal court looks to the law of the forum state to determine whether the federal court has personal jurisdiction. *Yarbrough v. Elmer Bunker & Assocs.*, 669 F.2d 614, 616 (10th Cir.1982). Therefore, in a diversity action the test for exercising long-arm jurisdiction over a nonresident of the forum is to determine first whether the exercise of jurisdiction is authorized by a forum statute and, if so, whether such exercise of jurisdiction would be consistent with the constitutional requirements of due process. In Oklahoma, this inquiry collapses into a single due process analysis because Oklahoma's long-arm statute provides that "[a] court of this state may exercise jurisdiction on any basis consistent with the Constitution of this state and the Constitution of the United States." 12 O.S.2001, § 2004(F). Personal jurisdiction over a nonresident individual therefore requires that the individual have minimum contacts with the forum state, Oklahoma. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). "In order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he must have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Courts recognize two types of personal jurisdiction—specific and general. General personal jurisdiction requires that the nonresident have continuous and systematic contacts with the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific personal jurisdiction requires application of a two-pronged test. First, does the nonresident have sufficient minimum contacts with the forum so that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Second, if sufficient minimum contacts are present, the court must find that "the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe*, 326 U.S. at 320, 66 S.Ct. 154). It must be reasonable to have the defendant defend in the forum for personal jurisdiction to comport with fair play and substantial justice. *World–Wide Volkswagen*, 444 U.S. at 292, 100 S.Ct. 559, 62 L.Ed.2d 490. Factors courts consider when analyzing whether jurisdiction is reasonable include, "the forum State's interest in adjudicating the dispute; the plaintiff's interest in obtaining convenient and effective relief, . . .; the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (citations omitted). Specific personal jurisdiction requires that both prongs be satisfied.

#### 1. General Personal Jurisdiction

A plaintiff need only make a *prima facie* showing of general personal jurisdiction when a pre-trial motion to dismiss is filed based upon affidavits and other writ-

ten memoranda. *Kennedy v. Freeman*, 919 F.2d 126, 128 (10th Cir.1990) (quoting *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir.1984)). If conflicting affidavits are presented by the parties, the conflict is resolved in favor of the plaintiff. *Id.* The minimum contact analysis is more stringent for general personal jurisdiction compared to specific personal jurisdiction because the contacts do not come from the events giving rise to the suit. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir.2004). The Court has reviewed the affidavits, the briefs of the parties, and the case law. Because the Court concludes that Plaintiff has sufficiently alleged specific personal jurisdiction over Defendant Schultheis, the Court declines to further address the issue of general personal jurisdiction.

### 2. Specific Personal Jurisdiction Over Schultheis

█ In a pre-trial motion to dismiss for lack of personal jurisdiction, a Plaintiff need only make a *prima facie* showing of specific personal jurisdiction. *See Kennedy*, 919 F.2d at 128. Conflicts between affidavits and other written memoranda are resolved in favor of the Plaintiffs. *Id.* The Court has reviewed the briefs of the parties, the submitted affidavits, and the case law, and concludes that Plaintiffs have sufficiently alleged that the Court has personal jurisdiction over Defendant Schultheis.

Specific personal jurisdiction requires satisfaction of a two step test. The first step is to determine whether Schultheis "has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472, 105 S.Ct. 2174 (internal quotations omitted). The second step of the test requires personal jurisdiction to comport with traditional notions of "fair play and substantial justice." *Id.* at 476, 105 S.Ct. 2174.

Plaintiff Clark notes that he had a fairly long-standing relationship with Defendant Schultheis, and met and discussed business with Schultheis on a regular basis beginning sometime in July 1994. Plaintiff alleges that in January 1998 Schultheis came to Tulsa, Oklahoma and met with Plaintiff Clark and David Gordon at Clark's offices to negotiate the reverse merger of Mr. Cigar, Inc. into a company which later became International Internet ("ININ"). In the summer of 1998 Clark was invited by Schultheis to visit Schultheis in Florida to view displays of Mr. Cigar vending machines.

On July 8, 1999, Schultheis and Tabin met in Tulsa, Oklahoma with David Gordon and Clark at Clark's offices to discuss several business opportunities. One of the business opportunities which Clark alleges was discussed was a strategy to create public shells. Clark claims that this strategy was the "blueprint" that was used by Schultheis and Tabin in acquiring Network Systems International, Inc. ("NESI"), the company that later became OnSpan Networking, Inc. Clark additionally alleges that on July 9, 1999, during a party at Clark's home, Schultheis, Tabin, Clark, and Holt discussed a business proposal, including the purchase of a NASDAQ shell that later became the OnSpan transaction.

Clark alleges that in the Spring of 2000, Schultheis and Tabin made telephone calls to Clark in Tulsa, Oklahoma to solicit Clark's investment in a shell company that eventually became OnSpan. Clark alleges that during the telephone discussion, several details were discussed, including the purchase of a NASDAQ listed shell company and acquisition of insider stock. Clark additionally alleges that Schultheis and Tabin invited Clark and Holt to the Bahamas to further discuss and finalize the details of the OnSpan transaction.

Plaintiffs note that on May 8, 9, and 10, 2000, Clark met in the Bahamas with Schultheis, Tabin, and others to discuss investment with the intent of gaining control of a currently listed NASDAQ company. Plaintiffs, in their complaint, note that the name of the company for which capital was being raised was not discussed at the meeting. Clark alleges that he learned the name of the company, Network Systems International (which later became OnSpan) one week after the meeting in the Bahamas.

Clark alleges that on June 14, 2000, he tendered a check in the amount of $300,000 into an escrow trust account with David Gordon in Tulsa, Oklahoma. Clark alleges that the amount was tendered pursuant to an escrow agreement between Network Systems International (later OnSpan) and Millennium Holdings, Inc., a company wholly owned and operated by Schultheis and Tabin. The escrow agreement is signed by Schultheis[1] as President of Millennium Holdings Group, Inc.

Plaintiffs maintain that Schultheis intentionally directed tortious actions towards an Oklahoma resident. Plaintiffs additionally assert that Schultheis hired an Oklahoma attorney to represent him from 1997 until 2001, which establishes additional contact with Oklahoma. Plaintiffs maintain that Schultheis has sufficient contacts with Oklahoma to satisfy the first prong of the minimum contact analysis for specific personal jurisdiction.

Defendant maintains that Schultheis did not call Clark but acknowledge that for the purpose of determining personal jurisdiction the Court may consider the Plaintiffs representation that the call was made. However, Defendants maintain that the telephone call is insufficient. *See also Far West Capital Inc. v. Towne*, 46 F.3d 1071, 1076–77 (10th Cir.1995) (holding defendant's phone calls and ten to twenty faxes and letters insufficient contacts for minimum contacts); *Misco–United Supply Inc. v. Richards of Rockford, Inc.*, 215 Kan. 849, 528 P.2d 1248, 1253 (1974) (holding one phone call by itself insufficient to find minimum contacts). Defendant alleges that the hiring of Oklahoma legal counsel does not establish personal jurisdiction over Schultheis. *See Far West Capital Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir.1995) (retention of legal counsel does not establish minimum contacts with the legal counsel's home forum). Defendant maintains that Plaintiffs do not allege that Schultheis committed any torts in Oklahoma or that any of the torts alleged involved forum contacts with Oklahoma.

The Court concludes that Plaintiffs have alleged that Schultheis has sufficient contacts with Oklahoma to satisfy the first prong for specific personal jurisdiction. Plaintiffs allege that the basic business plan for OnSpan was discussed in 1999 when Plaintiff Clark met Schultheis in Florida. In July 1999, the idea for OnSpan was discussed first at Plaintiff Clark's offices when Schultheis was visiting his offices, and a second time when Schultheis attended a party at Clark's house. In Spring of 2000, Schultheis and Tabin contacted Plaintiff in Oklahoma and discussed the basic business plan for what was to become OnSpan—the purchase of a NASDAQ shell company which they would

---

1. The agreement has a signature by David Schultheis which appears to be initialed by "lc" or "ec." Defendant represents that Gary Schultheis did not sign the agreement. Defendant also notes that the agreement is between Millennium Holdings Group, Inc. and Network Systems International, Inc., and does not involve Schultheis personally. Plaintiff notes that Millennium Holdings Group, Inc. is wholly owned by Schultheis and Tabin, and that Clark's investment was predicated on the escrow agreement. Defendant contends that the escrow agreement was signed July 10, 2004.

take control of. Schultheis and Tabin, during the phone call, additionally invited Clark and Holt to meet with them in the Bahamas to discuss and finalize the transaction. Schultheis, or an individual on behalf of Schultheis, signed an escrow agreement between OnSpan Networking, Inc. (which became OnSpan) and Millennium Holdings, Inc., which was wholly owned by Schultheis and Tabin. The escrow agreement provides that the parties to it agree to be subject to the jurisdiction of the Oklahoma courts with regard to suits arising out of or pertaining to the agreement. In the right situation minimal contacts may satisfy the minimum contact analysis. *See Burger King,* 471 U.S. at 475 n. 18, 105 S.Ct. 2174 ("So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction."). The existence of personal jurisdiction depends upon the nature of the contacts. The court analyzes the contacts to determine "whether they represent an effort by the defendant to 'purposefully avail[ ] itself of the privilege of conducting activities within the forum State.'" *Watkins v. Crescent Enterprises, L.L.C.,* 314 F.Supp.2d 1165, 1171 (N.D.Okla.2004) (quoting *Rambo v. Am. So. Ins. Co.,* 839 F.2d 1415 (10th Cir.1988)). Under the facts in this case, the Court concludes that the alleged contacts are sufficient to conclude that Schultheis purposefully availed himself of the privilege of conducting activities within Oklahoma for the purpose of the formation of this business agreement and the solicitation of the Plaintiffs.

The second prong of the test requires that the Court analyze whether jurisdiction would comport with the traditional notions of "fair play and substantial justice." If the Defendant is determined to have purposely directed his activities at a forum resident, the court examines the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most effective resolution of controversies, and the shared interest of the several states in furthering substantive social policies. *Equifax Services Inc. v. Hitz,* 905 F.2d 1355, 1359 (10th Cir.1990). Furthermore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). The Court concludes that under the specific facts and circumstances of this case, this is answered in the affirmative. Schultheis directed certain activities towards Oklahoma, as indicated by the solicitation telephone call to Plaintiff and at least two meetings with Plaintiff in Oklahoma at which the business prospects related to OnSpan were discussed. There is some degree of burden placed on Defendant in defending a lawsuit in Oklahoma rather than the state of his residence. However, Schultheis has visited Oklahoma several times, has conducted business in Oklahoma, and maintained almost daily contact with an Oklahoma attorney. Plaintiffs interests weigh in favor of adjudication in Oklahoma. Each of the Defendants resides in different states, and adjudication of the entire case in at least one state is preferable to two or more lawsuits in different states. The Court concludes that traditional notions of fair play and substantial justice are served by the continuation of this lawsuit with Schultheis as a Defendant.[2]

---

**2.** The Court notes that Plaintiffs' amendments to their briefs and filing of numerous supplemental affidavits have made the process more difficult for the Court and the parties involved.

## B. Conspiracy Theory of Jurisdiction

Plaintiff alleges that this Court has jurisdiction over Schultheis based upon the conspiracy theory of jurisdiction. Plaintiff asserts that pursuant to the conspiracy theory of jurisdiction, a Court may assert jurisdiction over all co-conspirators involved in the conspiracy as long as jurisdiction exists over a conspirator. Plaintiff notes that Plaintiff must make a *prima facie* showing of a conspiracy. Plaintiff claims to have met that burden in this case because Plaintiff alleges a conspiracy between Schultheis and Tabin to convince Plaintiffs to invest in OnSpan and steal Plaintiffs' investment.

The conspiracy theory of jurisdiction permits the assertion of jurisdiction over all co-conspirators, residents and non-residents, based upon their involvement in a conspiracy which occurred within the forum.

> Under the conspiracy theory, the plaintiff must:
>
> (1) make a prima facie factual showing of a conspiracy (*i.e.*, point to evidence showing the existence of the conspiracy and the defendant's knowing participation in that conspiracy); (2) allege specific facts warranting the inference that the defendant was a member of the conspiracy; and (3) show that the defendant's co-conspirator committed a tortious act pursuant to the conspiracy in the forum.

*Kohler Co. v. Kohler International, Ltd.*, 196 F.Supp.2d 690 (N.D.Ill.2002). *See also American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij, N.V.*, 710 F.2d 1449 (10th Cir.1983) (recognizing requirement that defendant conspired to commit an overt act in state in furtherance of the conspiracy).

In this case, Plaintiff alleges as a "fourth cause of action" a civil conspiracy. Plaintiff makes only general allegations, and none of the allegations include the commission of an overt act in Oklahoma in furtherance of the conspiracy. For civil conspiracy, "[m]ere allegation of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge v. McPike, Inc.*, 466 F.2d 65, 68 (10th Cir.1972) (*footnote omitted*). Further, "it is well settled that '[c]ivil conspiracy itself does not create liability.' " *Tanique, Inc. v. Oklahoma*, 99 P.3d 1209, 1218 (Okla.Civ.App.2004) (quoting *Roberson v. PaineWebber, Inc.*, 998 P.2d 193, 201 (Okla.Civ.App.1999)). "A conspiracy between two or more persons to injure another is not enough; *an underlying unlawful act is necessary* to prevail on a civil conspiracy claim." *Tanique*, 99 P.3d at 1218 (citation omitted) (emphasis included). For jurisdiction based on the conspiracy theory of jurisdiction to exist in Oklahoma, an overt act of the conspiracy must have taken place in Oklahoma. *See generally Kohler Co. v. Kohler Int'l Ltd.*, 196 F.Supp.2d 690, 697 (N.D.Ill.2002). The overt act must not be just alleged, but must be shown by affidavit that it likely took place. Mere allegations of conspiracy are insufficient. *See Baldridge*, 466 F.2d at 68.

The Court declines to further address Plaintiffs' allegation that jurisdiction is appropriate under the conspiracy theory because the Court recommends that the District Court deny the motion to dismiss based on the presence of personal jurisdiction.

## III. RECOMMENDATION

The Magistrate Judge recommends that the Defendants' motion to dismiss Schultheis for lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2) be DENIED.

## IV. OBJECTIONS

In accordance with 28 U.S.C. § 636(b) and Fed.R.Civ.P. 72(b), a party may file specific written objections to this Report and Recommendation. Objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma within 10 days of being served with a copy of this Report and Recommendation. *See* Fed.R.Civ.P. 6 (as to computation of time periods). If specific written objections are timely filed, the district judge assigned to this case will

> make a *de novo* determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions.

Fed.R.Civ.P. 72(b). *See also* 28 U.S.C. § 636(b)(1).

The Court of Appeals for the Tenth Circuit has adopted a "firm waiver rule" in connection with appeals from orders adopting a Magistrate Judge's report and recommendation. "[T]he failure to make timely objections to the magistrate's findings or recommendations waives appellate review of factual and legal questions." *United States v. One Parcel of Real Property,* 73 F.3d 1057, 1059 (10th Cir.1996) (quoting *Moore v. United States,* 950 F.2d 656, 659 (10th Cir.1991)). **Thus, a timely, specific and written objection is necessary to preserve an issue for *de novo* review by the assigned district judge and for appellate review by the court of appeals.** *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Haney v. Addison,* 175 F.3d 1217 (10th Cir. 1999); and *Talley v. Hesse,* 91 F.3d 1411 (10th Cir.1996).