## ALSUP v. SKAGGS DRUG CENTER et al.

No. 33374. June 21, 1949.

Rehearing Denied Oct. 31, 1950.

*223 P. 2d 530.*

T. Austin Gavin, of Tulsa, for plaintiff in error.

Wesley E. Disney, Joe B. Houston, Gerald B. Klein, and Henry Kolbus, all of Tulsa, for defendants in error.

GIBSON, J. Plaintiff in error, Mary Alsup, as plaintiff, sued Skaggs Drug Center, a copartnership, and K. C. Eldridge to recover damages on account of alleged false imprisonment. On the trial the court sustained demurrers interposed to plaintiff's evidence and awarded judgment for defendants. Motion for new trial was overruled and plaintiff appeals. The parties will be referred to as they appeared in the trial court.

The question presented is whether there was any competent evidence tending to establish plaintiff's cause of action and to support a verdict and judgment in her favor. If such evidence obtained it was error to sustain the demurrers thereto. Hatmaker v. Gripe et al., 184 Okla. 26, 84 P. 2d 418.

Defendants do not question the fact of plaintiff's detention but contend that same was not unlawful. Therefore there is need to state in detail only those facts pertinent to the question of the lawfulness of the detention.

The defendant partnership is a mercantile establishment in the city of Tulsa, Oklahoma, engaged in the sale at retail of drugs and accessories, and defendant K. C. Eldridge is its manager. Plaintiff and her daughter, Bobetta Burroughs, were shopping therein. It was the custom for shoppers to select the articles purchased and pay the cashier therefor before leaving the department wherein the purchases were made. Both plaintiff and her daughter

made purchases in the main retail department. While so doing plaintiff inquired of a saleslady whether they had a license holder to be attached to steering wheel of a car, an item which her husband had requested her to get, and was told that if they had it it would be in the front part of the store. Plaintiff, without checking out her purchases in the department, went through the swinging gate into the front of the store and stopped at a card stand with purpose of selecting two birthday cards, and it was at that moment she was accosted by defendant Eldridge. The daughter checked out her purchases and came out of the department immediately behind Eldridge. The evidence discloses that the following then transpired: Eldridge accosted the plaintiff by tapping her on the shoulder and saying "Lady." It immediately occurred to plaintiff that she was accosted by reason of her not having checked out the articles purchased, and she called to her daughter and asked her why the latter had not reminded her of the fact and was told by the daughter that she was coming to do so when Eldridge passed and preceded her. Plaintiff stated to Eldridge "You surely don't think I am trying to steal these articles, do you?" To which Eldridge made no reply other than to say "Come to the back with me." He took her by the arm and went to the back of the store and directed her to go up the stairway to the office where they became seated. A clerk who accompanied them took from the plaintiff's paper shopping bag the several articles, laid them on Eldridge's desk and stated the price of each. Plaintiff laid a twenty dollar bill upon the desk and stated to Eldridge that she had no intention of stealing the articles and wished to pay for them out of the said bill. Eldridge, instead of accepting the money, replied to the effect that people come to the store every day with money to pay for articles that they steal. Eldridge asked plaintiff her name and address. After being told he checked the telephone directory and remarked to the clerk

"she didn't lie about that." Plaintiff told Eldridge that she was under care of physicians and requested him to call either of two whose names she gave. She requested him to call her husband. She advised him that she had been employed at the National Bank of Tulsa Building and requested him to call anyone of three persons whose names were given who would advise him about her character. Eldridge made none of the requested calls, and made no response to the requests. After a period of meditation Eldridge used the telephone and soon thereafter two officers appeared. One of them asked Eldridge if he intended to take the money for the articles. Eldridge replied that he had no intention of doing so, and directed plaintiff to go with the officers, which she did, believing she was in duty bound to submit to their authority as officers.

The officers acted without written warrant of arrest. At the police station to which plaintiff was taken she was released upon bond. Upon information filed by city attorney of the city of Tulsa plaintiff was charged with the shoplifting of goods of the value of $14.28. Upon trial in the municipal court plaintiff was acquitted.

It is the contention of plaintiff that the evidence, prima facie, proves false imprisonment and false arrest. Defendants contend that both the detention and the arrest were lawful and therefore there was no false imprisonment.

Since there is involved imprisonment both with and without arrest it is well to bear in mind the distinction in order to properly evaluate the testimony. The distinction is stated in 22 Am. Jur. 354, §3, as follows:

"As is seen from the definitions, false arrest and false imprisonment as causes of action are indistinguishable. The only distinction lies in the manner in which they arise. In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law; in a false imprisonment, the detention is purely a matter between

private persons for a private end, and there is no intention of bringing the person detained before a court, or of otherwise securing the administration of the law."

The fact of the detention of one's person, without process of law as authority therefor is prima facie unlawful and the burden of proof is upon the defendants to justify the same unless it appears from plaintiff's evidence that the detention was lawful. 22 Am. Jur. 421, §107. See, also, Harry McAleer, etc., v. Albert R. Good et al., 216 Pa. 473, 65 Atl. 934, 10 L. R. A. (N.S.) 303, annotated; Fox v. McCurnin, 205 Iowa, 752, 218 N. W. 499.

Even if it be thought that the acts relied on as constituting the offense were committed in the persence of the defendants, this would not suffice to make the arrest lawful unless the offense was in fact committed (6 C. J. S. 608, and cases cited). The fact of such guilt is excluded by the demurrer.

The authority of the officers to arrest plaintiff without a warrant is defined in 22 O. S. 1941 §196, subd. 1, as "For a public offense, committed or attempted in his presence." The evidence negatives the existence of any basis for a lawful arrest and it follows that the arrest by them of the plaintiff was a false arrest and constituted false imprisonment. Under the evidence the jury could properly believe that the arrest by the officers was at the instance of the defendants. The legal effect thereof is stated in 25 C. J. 469, §34, as follows:

"An individual who directs or requests a peace officer to make an arrest which turns out to be illegal will be liable in the same manner as if he had made the arrest himself, however pure his motives may have been."

The doctrine of the quoted text was recognized and applied by this court in S. H. Kress & Co. v. Bradshaw, 186 Okla. 588, 99 P. 2d 508. In the syllabus we held::

"All who, by direct act or indirect procurement, personally participate in,

or proximately cause, the false imprisonment or unlawful detention of another are liable therefor."

We are of the opinion that there was introduced competent evidence which tended to support plaintiff's alleged cause of action and to support a verdict and judgment in her favor. It was error to sustain a demurrer thereto.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.