MAYO HOTEL COMPANY, a corporation, Plaintiff in Error,

v.

Elizabeth COOPER, Defendant in Error.

No. 37120.

Supreme Court of Oklahoma.

May 8, 1956.

Rehearing Denied June 12, 1956.

Clarence A. Warren, Tulsa, for plaintiff in error.

Covington & Donovan, by Richard D. Gibbon, Tulsa, for defendant in error.

PER CURIAM.

This case was instituted by Elizabeth Cooper against the Mayo Hotel Company, a corporation, operating a hotel in Tulsa, to recover damages on account of false imprisonment. The jury returned a verdict for the plaintiff in the sum of $5,000, the amount sued for. Upon consideration of the defendant's motion for a new trial, the court ordered that unless plaintiff remit all

over $4,000 the motion for a new trial would be sustained, whereupon plaintiff filed her remittitur of $1,000. Judgment was then rendered for $4,000 damages, the motion for a new trial was overruled, and defendant appeals.

The parties will hereinafter be referred to as they appeared in the trial court.

The uncontradicted evidence material to the issues herein is as follows: On September 26, 1953, plaintiff was an employee of defendant. She was employed as a chambermaid and had been so employed for a period of five years prior to that date. On said date at about 8:30 P.M. certain guests of defendant, occupying room 901, missed some articles from their room. They reported the loss to a Mr. Snider, the night assistant manager, who in turn reported the situation to Paul Whalen, an assistant manager of defendant who worked the day shift. Whalen called one, Lieutenant Sturgeon, a member of the Tulsa Police Department, assigned to the stolen car detail, also employed by defendant as relief house detective, working each Saturday night. Plaintiff and one, Margaret Jordon, had together cleaned up room 901 on the morning of September 26, 1953. At 9:30 P.M. that day Sturgeon, in furtherance of investigating the matter, contacted defendant's guests in room 901, obtaining from them a list of the articles. On Sunday morning, September 27, 1953, Whalen met plaintiff in the linen room on the third floor as she arrived for work, at which time he took her to a Miss Schoulette's office, where he questioned her concerning the missing articles. On Monday morning, between 10:00 and 10:30, plaintiff was working defendant's eleventh floor, at which time Whalen, the assistant manager of defendant, Lieutenant Sturgeon and another officer of the Tulsa Police approached plaintiff, Whalen telling her that there were two men desiring to talk to her. They went into the elevator and rode the elevator to the ninth floor where Whalen got off and came back with Margaret Jordon. They then rode the elevator to defendant's lobby, where they all proceeded to the alley entrance. At this entrance Whalen informed both plaintiff and Margaret Jordon to turn in their keys. Plaintiff and Margaret were

then put in a police car and taken to the city jail where they were questioned by the two officers concerning the missing articles. Upon plaintiff's denial of knowing anything about them she was placed in a cell and held incommunicado until 11:00 A.M. the next day, at which time, having taken a lie detector test, she was released. She then returned to defendant hotel and turned in her uniform. She was without employment from that time until about a week before Christmas, 1953, at which time she obtained employment with St. Johns Hospital at a salary of $25 per week, which was $5 less per week than she received at the time she was placed in jail.

We here note that the answer of defendant, in effect, admits that the police officers arrested plaintiff and incarcerated her in the city jail, and then asserts that the police officers did this on their own initiative and as a result of their own investigation; that defendant's agent did not participate in any wise other than to notify the Tulsa Police Department of the probable commission of a crime; that defendant's agents took no part in the investigation by the police officers, or in any wise suggested to, recommended or requested the arrest of plaintiff or any other person in connection with the alleged crime.

From the evidence adduced at the trial it is apparent that defendant's guests suffered the theft of some personal items; that the arrest of plaintiff, if made, was made without a warrant being issued for the arrest.

■ The liability, if any, of defendant depends upon whether its agent, Paul Whalen, assisted the police officers in any way in arresting and detaining plaintiff. In the case of S. H. Kress & Co. v. Bradshaw, 186 Okl. 588, 99 P.2d 508, paragraphs 1, 3 and 4 of the syllabus, this court said:

"1. Any unlawful restraint of an individual's personal liberty or freedom of locomotion against his or her will constitutes false imprisonment. * *

"3. False imprisonment may be accomplished without actual arrest, assault, or imprisonment, and may be

committed by words alone or by acts alone, or by both.

"4. All who by direct act or indirect procurement, personally participate in, or proximately cause, the false imprisonment or unlawful detention of another are liable therefor."

See also Alsup v. Skaggs Drug Center, 203 Okl. 525, 223 P.2d 530.

Relative to the parties responsible for her arrest and detention plaintiff testified that on Sunday morning, September 27, 1953, Mr. Whalen was at the linen room on the third floor when she arrived for work; that he immediately took her to Miss Schoulette's office where he accused her of taking the missing articles from room 901; that when she denied it he insisted that she had the articles; that after being so accused she continued her work that day; that on the next morning he again approached her, in company with the two police officers, one of whom she knew to be the house detective, and also a member of the Tulsa Police force; that when he informed her that the two men wished to talk with her he told her to come with them; that when they arrived at the ninth floor he ordered her to stay with these two men in the elevator. When asked why she didn't leave the elevator she answered that Whalen had told her to stay with these two men and she felt like she had to stay. She further testified that neither of the two officers at any time said anything to her until they got her to the police station; that up until that time everything that was said or done to her throughout Sunday and Monday was done by Whalen.

■■■ The evidence on the part of the defendant was in direct conflict with this testimony of plaintiff. Such testimony was to the effect that Whalen on Sunday merely questioned plaintiff as to whether or not she took the articles; that on Monday he merely went with the two police officers to identify plaintiff; that the police officers talked to plaintiff, at which time she denied she had helped clean room 901; that they then went down to floor 9 and talked to Margaret Jordon, who told them plaintiff had helped clean up the room; that they again went and talked with plaintiff who,

being confronted with the statement of Margaret Jordon, admitted helping clean the room, whereupon the officers took plaintiff down to the police car and took her to the city jail; that Whalen at no time said anything to plaintiff other than to tell her the two officers wished to talk to her and to tell her to turn in her keys.

As we view and consider the evidence adduced on the part of plaintiff, we think the same tends to show that she was restrained of her liberty under circumstances from which it can be presumed that the restraint effected was not lawful; and such evidence, together with the inferences fairly and reasonably arising therefrom, tended to show defendant's employee contributed to such restraint. Such evidence was sufficient to make out a prima facie case of unlawful restraint or detention against the defendant. In S. H. Kress & Co. v. Bradshaw, supra, this court quoted from the case of Smith v. Clark, 37 Utah 116, 106 P. 653, 26 L.R.A., N.S., 953, Ann.Cas.1912B, 1366, as follows:

"'* * * When by proof of facts or circumstances tending to show that the plaintiff was restrained or detained or imprisoned by the defendant, without a warrant, or other process, or by threats or force, or other facts or circumstances which naturally give rise to the inference or presumption that the restraint or imprisonment was wrongful or unlawful, he undoubtedly has made a prima facie case. The duty of proceeding to show a legal justification for such restraint, detention, or imprisonment then rests upon the defendant. * * *'"

While defendant has produced evidence that conflicts with that of plaintiff, we are unable to find any evidence on the part of defendant tending to show a legal justification for the restraint, detention, or imprisonment of plaintiff. Also, such conflicting evidence as adduced in the trial court was a matter for the jury under proper instructions.

With respect to defendant's contention that the trial court should have sustained its demurrer to plaintiff's evidence or, in any event, should have sustained the motion of the defendant for the court to direct the

jury to return a verdict for the defendant, we hold said demurrer and motion to be without merit.

█ The defendant next argues that the damages awarded are so excessive as to indicate that the verdict was the result of passion and prejudice. We cannot agree. From an examination of many cases dealing with false imprisonment with reference to the amount of damages awarded, we find some of the lesser amount than awarded here and many cases far in excess of that in this case awarded. The amount depends upon the facts in each particular case, with especial regard to the relationship of the parties, the means and extent of the unlawful detention, the amount of suffering, humiliation, and disgrace thereby caused, and any other proper facts or elements present.

In the instant case, it is uncontradicted that plaintiff, prior to her imprisonment, enjoyed an excellent reputation; that her truth and veracity was never before questioned; that a 95 year old helpless aunt was dependent upon her for food and care; that by reason of her imprisonment she was unable to look after this aunt; was prohibited from communicating with any person with reference to looking after this aunt wholly dependent upon her; that she suffered a loss of reputation in the community wherein she lived; that she was unable to secure employment for a time thereafter, and when employment was obtained, her salary was for a lesser amount per week than it had been prior to the imprisonment; that as a result of such imprisonment she suffered great mental strain, nervousness and humiliation. We can think of but few, if any, more horrifying experiences than that of being suddenly taken from a peaceful and orderly existence and placed in a helpless situation of being incarcerated in a jail and held incommunicado under the accusation of a crime. We think this particularly true in the instant case, where the party was a woman who had always enjoyed an excellent reputation and whose honesty and veracity had never before been questioned.

From a consideration of the merits of the case, together with a comparison of the amount of verdicts awarded in similar cases, we are unable to conclude that the amount of damages awarded, especially in light of the remittitur ordered by the trial court, is so excessive as to indicate that the verdict was arrived at as a result of passion and prejudice.

There being no prejudicial error in the record, the judgment is affirmed.

JOHNSON, C. J., WILLIAMS, V. C. J., and CORN, DAVISON, HALLEY, BLACKBIRD, JACKSON and HUNT, JJ., concur.

The Court acknowledges the aid of the Supreme Court Commissioners in the preparation of this opinion. After a tentative opinion was written by Commissioner Jean R. Reed and approved by Commissioners J. W. Crawford and James H. Nease, the cause was assigned to a Justice of this Court for examination and report to the Court. Thereafter, upon report and consideration in conference, the foregoing opinion was adopted by the Court.