2016 OK CIV APP 55

**Joshua SHAW, Plaintiff/Appellant,**

v.

**CITY OF OKLAHOMA CITY,
Defendant/Appellee.**

Case Number: 113757

Court of Civil Appeals of Oklahoma,
Division No. 3.

FILED AUGUST 11, 2016

Mandate Issued: 09/14/2016

Holly Hefton, Oklahoma City, Oklahoma, for Plaintiff/Appellant,

Richard Carter Smith, Oklahoma City, Oklahoma, for Defendant/Appellee.

Opinion by Wm. C. Hetherington, Jr., Judge:

¶1 Joshua Shaw (Plaintiff or Shaw) appeals an order granting the summary judgment motion filed by Defendant Oklahoma City, Oklahoma (City) on Plaintiff's petition filed pursuant to Oklahoma's Governmental Tort Claims Act (GTCA) alleging false arrest, assault and intentional infliction of emotional distress (IIED) against City and four unnamed police officers. Upon review of the evidentiary material submitted to the trial court and applicable law, we AFFIRM the judgment.

## FACTS

¶2 According to Plaintiff's petition, he was an off-duty McLoud police officer on December 10, 2012, when he met a female friend, a fellow CLEET trainee, at Henry Hudson's Pub on Memorial Road in Oklahoma City. While eating, Plaintiff and his friend were "discussing going to the gun range and shooting their weapons." An off-duty Village police officer, who was sitting near them, overheard parts of their conversation, and "became concerned the couple was discussing terroristic acts." The Village police officer discussed his concerns with the bartender, who explained the conversation was not "criminal in nature" and "the pair were also officers." Despite that information, the Village police officer called Oklahoma City Police Department (OKCPD), reported what he heard, and requested OKCPD to send someone to the location.

¶3 The petition further alleges four OKCPD arrived in response to the call. One officer approached Plaintiff from behind, grabbed his shirt, and yanked him off the bar stool. Another officer grabbed Plaintiff, and they dragged him outside, during which Shaw alleges he "repeatedly [told] the officers he is a police officer." After "one officer notices [Shaw's] badge under his jacket" and they realize he is a police officer, the officers explained "they had a call from an off duty officer about someone discussing shooting an AK–47." Shaw finally alleges he "was de-

tained for over twenty-five minutes by the OKCPD."

¶ 4 In the petition's "first cause of action," Shaw seeks damages for false arrest, alleging "charges were never filed against [him,]" and "as a direct result of Officers John Doe 1–4 official actions, *made in the course and scope of their employment*, he was falsely arrested and suffered damages." He contends "City is liable to [him] for damages based upon respondeat superior" in excess of $75,000.00.[1]

¶ 5 The "second cause of action" titled "Assault and Intentional Infliction of Emotional Distress," alleges the officers "intentionally used their power to make an example out of Shaw by using threats, intimidation, and physical force." In the same paragraph, it alleges each officer "purposefully put [him] in a state of severe distress and embarrassment" and "as a direct result of the intentional conduct, Shaw suffered physical and emotional injuries and severe emotional distress." He again claims damages in excess of $75,000.00.

¶ 6 The last two paragraphs of the petition allege Shaw complied with GTCA's requirement to file a notice of tort claim within a year of the incident and a petition within 180 days of the denial of his claim. After a prayer for judgment against "the defendants," Shaw re-asserts his claim for damages in excess of $75,000.00.

¶ 7 City's Answer admits some allegations but specifically denies the material allegations of the petition.[2] It also admits Shaw's compliance with the jurisdictional requirements of the GTCA and raises numerous affirmative defenses, including it has no liability for its employees' acts beyond the scope of their employment and their actions were based on probable cause.

¶ 8 City later moved for summary judgment, arguing it has no liability under the GTCA for the assault and IIED theories of liability and there was probable cause for the arrest. As its support, City attaches excerpts of Shaw's deposition testimony.

¶ 9 Shaw filed a response which, *inter alia*,[3] opposes City's probable cause argument based on a violation of § 1272.1, *i.e.*, unlawful to carry or possess firearms where liquor is consumed. After the City filed a reply brief, the trial court filed its Order sustaining City's motion for summary judgment "on all grounds" on February 17, 2015. Plaintiff appeals.

## STANDARD OF REVIEW

¶ 10 This appeal is governed by and follows the procedure set forth in Oklahoma Supreme Court Rule 1.36, 12 O.S. 2011, ch. 15, app. 1, without appellate briefing. The appellate standard of review for a trial court's grant of summary judgment is *de novo*. *Carmichael v. Beller*, 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. When determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary material submitted by the parties and affirm if there is no genuine issue as to any material fact and City is entitled to judgment as a matter of law. *Perry v. Green*, 1970 OK 70, 468 P.2d 483. All

---

1. We note the last sentence in paragraph 8 of the Petition states *"Mendoza's damages are in excess of seventy-five thousand dollars ($75,000)."* We assume this is a typographical error which was intended to read "Shaw's damages," because he is the only named plaintiff in the Petition. City's Answer states it "does not know the identity of 'Mendoza.'"

2. City's Answer "denies Paragraph 7 of the Petition" in which Shaw alleges the official acts of Officers John Doe 1–4 were "made in the course and scope of their employment" and "he was falsely arrested and suffered damages." However, in "[r]esponding to paragraph 8 of the Petition, [City] admits that it may be responsible for actions of its employees that occurred within the scope of their employment, but [City] denies [Shaw] was falsely arrested and/or suffered any damages."

3. Shaw's dismissal without prejudice is addressed in this opinion's "Preliminary Issues" section. Predicting City would argue Shaw's summary judgment response is filed out of time, he argued it was not, citing 12 O.S. § 2006(D) and Rule 4 of the Rules of the District Court. In its reply, City disagrees with Shaw's interpretation of § 2006(D), argues the response was filed four days late, and requests its motion be deemed confessed pursuant to Rule 4(e). Although the appealed order lacks a ruling on this issue, it states the trial court considered "all the briefs filed," the implication from which the trial court agreed with Shaw's position.

inferences and conclusions to be drawn from the evidentiary material must be viewed in a light most favorable to Shaw. *Ross v. City of Shawnee*, 1984 OK 43, 683 P.2d 535. If the material subject to consideration on a motion for summary judgment either disclose controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, a motion for summary judgment should be denied. *Hulett v. First National Bank and Trust Company*, 1998 OK 21, ¶ 3, 956 P.2d 879, 881.

## ANALYSIS

### Preliminary Issues

■ ¶ 11 The caption of Shaw's petition includes defendants, City and "Officers John Doe 1–4, individually And in their official capacity."[4] After detailing Shaw's version of the facts, his petition identifies two separate "causes of action," which are actually three theories of liability for a single cause of action, *i.e.*, his encounter with City's four police officers on December 10, 2012. The order on appeal does not expressly dispose of Shaw's cause of action against the unnamed defendants in their individual capacities.

¶ 12 In the response to City's summary judgment motion, Shaw states "[h]e alleged intentional acts against officers Doe 1–4, in his petition. Since the individuals were never served by [Shaw], he is hereby dismissing his claims of intentional acts." In City's reply, it relied in part on Shaw's dismissal to support granting summary judgment in its favor. "If after pretrial hearing, an action may only be dismissed by agreement of the parties or by the court." 12 O.S. 2011 § 684(A). The order on appeal contains no court approval or party agreement for Shaw's dismissal. Nevertheless, because Shaw never served any individual officers prior to the summary judgment, only the liability of the City is at issue on

appeal. *See GJA v. Oklahoma Dept. of Human Services*, 2015 OK CIV APP 32, n. 1, 347 P.3d 310, 318; *Tanique, Inc. v. State ex rel Oklahoma Bureau of Narcotics and Dangerous Drugs*, 2004 OK CIV APP 73, ¶ 10, 99 P.3d 1209, 1213. Consequently, this Court finds the trial court's order filed February 17, 2015 is an appealable order. *Carr v. Braswell*, 1989 OK 52, 772 P.2d 915.

### Intentional Infliction of Emotional Distress

■ ¶ 13 For summary adjudication of Shaw's IIED theory of liability, City cites *McMullen v. City of Del City*, 1996 OK CIV APP 46, 920 P.2d 528, for its holding that IIED necessarily requires proof that an employee was acting in bad faith, in which case the employee's actions would be outside the scope of their employment and the political subdivision has no liability. City points out *McMullen* relied on *Parker v. City of Midwest City*, 1993 OK 29, 850 P.2d 1065, which held the intentional tort of malicious prosecution required a showing of malice and "the Act specifies that a city is not liable for acts of its employees which are outside the scope of employment" and "the statutory definition of 'scope of employment' excludes those acts done in bad faith." *Id.*, ¶ 10.

¶ 14 Since *Parker*, the Court in *Tuffy's Inc. v. City of Oklahoma City*, 2009 OK 4, 212 P.3d 1158, found no error with the trial court's dismissal of the plaintiff's claim for tortious interference with a business relationship against the City alleging its police officers harassed and assaulted nightclub customers, "because the tort requires a showing of bad faith and thus cannot be committed within the scope of employment by an employee of a political subdivision." *Id.*, ¶ 15. Based on these authorities, we conclude the trial court did not err in granting summary judgment on Shaw's petition alleging IIED

---

4. A tort claim brought against an employee in his or her official capacity is viewed as imposing liability upon the governmental entity, and designating an employee in such capacity as a *named* defendant for this type of claim is improper. *See Pellegrino v. State ex rel. Cameron University*, 2003 OK 2, ¶ 6, 63 P.3d 535, 537, and 51 O.S. 2011 § 163(C). Designating a defendant as "John Doe" in an action brought pursuant to GTCA appears to be a common practice to avoid violation of § 163(C). *See GJA v. Oklahoma Dept. of Human Services*, 2015 OK CIV APP 32, n. 1, 347 P.3d 310, 318; *Davis v. City of Tulsa*, 2004 OK CIV APP 28, n. 1, 87 P.3d 1106; *Cabelka v. Comanche County Hospital of Lawton*, 2004 OK CIV APP 27, 87 P.3d 1101; and *Tanique, Inc. v. State ex rel Oklahoma Bureau of Narcotics and Dangerous Drugs*, 2004 OK CIV APP 73, 99 P.3d 1209.

against City for the actions of its employees/police officers.

### Assault

 ¶ 15 City contends it cannot be liable on Shaw's assault claim because that action, as alleged by Shaw, would be outside the scope of the OKCPD officers' employment. Its position is based on excerpts of Shaw's allegations and deposition testimony, about which City argues "because he *alleges* that the officers *intentionally and purposefully assaulted him without justification*, the acts are outside the scope of employment and [City] cannot be liable on this claim." City acknowledges the general rule recognized in *Rodebush v. Oklahoma Nursing Homes, Ltd.*, 1993 OK 160, ¶ 12, 867 P.2d 1241, that "it is not within the scope of an employee's employment to commit an *assault* on a third person" *and also* that rule's exception—"an employee's act is within the scope of employment if it is incident to some service being performed for the employer or arises out of an emotional response to actions being taken for the employer." *Id.*

¶ 16 City specifically argues Shaw's *allegations* in his petition require a showing of bad faith like malicious prosecution and IIED theories, and thus it can not be held liable under the GTCA because such acts are outside the scope of employment. In its first authority, *Holman v. Wheeler*, 1983 OK 72, 677 P.2d 645, the Court reviewed an order granting a demurrer to the petition and stated "[c]*onsidering as true all facts well pleaded together with all inferences therefrom*, we hold the appellant's *allegations* in reference to appellee's *willful and wanton conduct*, place appellee outside the scope of employment." (Emphasis added.) 1983 OK 72, ¶ 14, 677 P.2d at 647.

¶ 17 Twenty years later, the Court in *Pellegrino v. State ex rel. Cameron University*

*ex rel. Board of Regents of State*, 2003 OK 2, ¶ 10, 63 P.3d 535, 538, cited with approval the same holding in *Holman*, except without the standard of review used by the Court. The *Pellegrino* Court then found "[o]ur analysis *in Holman* is consistent with our opinion construing the GTCA in *Sholer v. State ex rel. Dept. of Public Safety*, 1995 OK 150, 945 P.2d 469 (class action for money had and received was neither a claim or tort as defined by the GTCA, so not a bar to the action.)

¶ 18 The same year *Pellegrino* was decided, the Court in *Mustain v. Grand River Dam Authority*, 2003 OK 43, 68 P.3d 991, agreed with the Court of Civil Appeals' affirmance of the trial court's order granting summary judgment to the Grand River Dam Authority (Authority) on the plaintiff's petition, which in part alleged Authority's failure to rectify a known and allegedly dangerous condition and to provide warnings of the danger constituting "deliberate, willful or malicious conduct." After finding the GTCA applied to Authority, the Court examined "*Mustain's theory* to see if it falls under the Act's purview." *Id.*, ¶ 21. Considering "[a]n employee whose acts are malicious, willful, wanton and in bad faith is not acting in the scope of his employment," the Court held:

> If *Mustain's characterization of the actions by the Authority's employees* in this case is correct and sustainable by proof, those actions by the agents must be considered as falling outside the scope of their employment. Because Mustain's claims against the Authority are governed by the GTCA, *she cannot recover against the Authority for injuries occasioned by deliberate, willful or malicious conduct of its employees*. (Emphasis added.)

*Mustain*, 2003 OK 43, ¶ 21, 68 P.3d 991.[5]

¶ 19 In City's second authority, *Jackson v. Oklahoma City Public Schools*, 2014 OK CIV

---

5. The mother's petition in *Morales v. City of Oklahoma City ex rel. Oklahoma City Police Dept.*, 2010 OK 9, ¶ 4, 230 P.3d 869, 873, alleged a police officer "used excessive force, acted negligently, intentionally, maliciously, and in reckless disregard" of her daughter's safety during her arrest. City challenged it by motion to dismiss, arguing "the *allegations* of intentional, malicious, and reckless conduct" took the officer's conduct outside the scope of his employment and relieved City of liability. (Emphasis added.) The mother amended the petition by removing "all descriptive allegations" of the officer's conduct and replacing "with non-specific allegations of tort-inflicted damage." Unlike *Morales*, Shaw's deposition testimony reinforces his *allegations* of intentional and malicious conduct, and his petition mentions only "physical force" when describing

APP 61, 333 P.3d 975, the parents sued a school district, alleging its teacher assaulted and battered their child and made claims for respondeat superior liability and negligent hiring, training and supervision. The trial court granted the school district's motion for summary judgment, and the parents appealed. The Court of Civil Appeals in *Jackson* found "the record shows no disputed material facts," ¶ 1, and affirmed the order, holding in relevant part, "[i]t is settled that intentional torts are outside the scope of employment and therefore District may not be liable for a teacher's *assault and battery*." (Emphasis added.) ¶ 9.

■ ¶ 20 In this case, City's motion for summary judgment lists as an "undisputed fact" that Shaw believes the officers were acting *intentionally* and *maliciously* and attaches his deposition testimony as support. Shaw does not specifically controvert that fact in his response or respond in any way to City's assault argument in its summary judgment motion. City's argument is supported by the evidentiary material and the cited case law, and we find no error with the trial court's summary adjudication on Shaw's assault theory.[6]

### False Arrest Theory

¶ 21 In Oklahoma, 76 O.S. 2011 § 6 provides that "[e]very person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm." Title 22 O.S. 2011 § 196 provides, in relevant part: "a peace officer may, without a warrant, arrest a person 1) [f]or a public offense, committed or attempted in his presence or 2) [w]hen the person arrested has committed a felony, although not in the officer's presence."

■ ¶ 22 "False arrest is an unlawful restraint of an individual's personal liberty or freedom of locomotion" or "an arrest without proper legal authority." *Overall v. State ex rel. Dept. of Public Safety*, 1995 OK CIV APP 107, ¶ 22, 910 P.2d 1087, 1091.[7] The Court in *Overall* examined the tort of false arrest and held:

A good faith, warrantless arrest by an officer without due and legal process, *i.e.*, probable cause, is a false arrest. As such the arrest is tortious. The mental intent of the officer in making the arrest is irrelevant. There is *no inference of bad faith, ill will, or malice* to be drawn from the actions of the officer making the arrest."[8] (Emphasis added.)

*Overall*, ¶ 25, 910 P.2d at 1091.

■ ¶ 23 In this case, City defends against Shaw's false arrest theory arguing the officers' had probable cause for either 1) a violation of 21 O.S. Supp. 2012 § 1272.1 or 2) investigation of a reported crime. Under § 1272.1, it "shall be unlawful" to carry or possess a weapon in any establishment where low-point beer or alcoholic beverages "are consumed." To support probable cause "to detain Shaw" under § 1272.1, City relies on Shaw's admissions during his deposition that

the officers' alleged "assault." The latter allegation is consistent with the "reasonable force" police officers are allowed to use pursuant to 21 O.S. 2011 § 643 and his assault and IIED theories of liability. Nor has Shaw pleaded "excessive force conduct" against City or its police officers, based either on 1) negligence or other "delictual theory" of recovery, *see Morales*, n. 35, 2) a violation of art. 2, § 30 of the Oklahoma Constitution, *see Perry v. City of Norman*, 2014 OK 119, 341 P.3d 689, or 3) a civil rights violation, *see Decorte v. Robinson*, 1998 OK 87, 969 P.2d 358.

6. Before granting summary judgment a trial court must consider and rule out all theories of liability raised by the evidentiary material presented. *Craft v. Graebel–Oklahoma Movers, Inc.*, 2007 OK 79, ¶ 26, 178 P.3d 170, 177.

7. *See also Irwin v. SWO Acquisition Corp.*, 1992 OK CIV APP 48, ¶ 13, 830 P.2d 587, 590 (citing *Alsup v. Skaggs Drug Center*, 1949 OK 136, 203 Okla. 525, 223 P.2d 530, for holding "[f]alse arrest is the unlawful restraint of an individual against his will."). "In a false arrest, false imprisonment exists, but the detention is by reason of an asserted legal authority to enforce the processes of the law." (Emphasis added.) *Alsup*, ¶ 7, 223 P.2d at 533.

8. Pursuant to 21 O.S. 2011 § 535, "[e]very public officer or person pretending to be a public officer, who under the pretense or color of any process or other legal authority, arrests any person or detains him against his will ... without due and legal process, is guilty of a misdemeanor."

1) he was in an establishment that sold low point beer and alcoholic beverages, 2) he was carrying a pistol or revolver on his person at the time, 3) he was not on duty as a police officer at the time, 4) he informed the officers he was carrying a weapon, and 5) there were alcoholic beverages in front of him and his friend at the bar when the officers entered the establishment.

¶ 24 Shaw's response focuses primarily on opposing City's § 1272.1 argument, identifying in his response only two "Disputed Material Facts": 1) "[t]here is no evidence Plaintiff was drinking," and 2) "[t]he officers did not know Plaintiff was a police office or that he was carrying a weapon at the time they approached or responded to the call." Both of Shaw's disputed material facts cite to City's corresponding "undisputed fact" by number.

¶ 25 Concerning Shaw's first "Disputed Material Fact," he argues there is no evidence he was drinking while at Henry Hudson's and he testified he ate dinner. Concerning the second, Shaw also argues "pursuant to § 1272.1, he could carry a weapon in a bar."[9]

¶ 26 Lastly, City argues Shaw was not arrested as a result of this incident, he was not handcuffed or placed in the back of a police vehicle, and no arrest report was made. City contends "[Shaw] was briefly inconvenienced while the officers investigated a report of a possible crime." It then quotes *Abraham v. State*, 1998 OK CR 29, ¶ 4, 962 P.2d 647, for holding "even when there is no probable cause to make an arrest, if an officer has 'reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed *felony*, then [an investigative] stop may be made to investigate that suspicion.'" (Emphasis added.)

Based thereon, City argues, even if the officers lacked probable cause to investigate a violation of § 1272.1, they had reasonable suspicion to detain him in order to investigate the eyewitnesses report that [Shaw] and his friend were "discussing terroristic acts."

██ ¶ 27 Although not mentioned by City, a violation of § 1272.1 is a felony, punishable by imprisonment, fine or both. *See* 21 O.S. Supp. 2012 § 1272.2. A felony arrest without a warrant is legal depending upon "... whether the arresting person has probable cause, or reasonable cause, to make the arrest." *Tomlin v. State*, 1994 OK CR 14, ¶ 19, 869 P.2d 334, 338. "If a police officer arrests a person without a warrant, the arrest is not unlawful if the officer, upon his own knowledge or *upon facts communicated to him by others*, has reasonable cause to believe the person has committed a felony." (Emphasis added) *Stout v State*, 1984 OK CR 94, ¶ 13, 693 P.2d 617, 622. "The State is not bound to prove that a felony was actually committed in order to justify such an arrest; *as long as reasonable cause existed to believe the person committed a felony*, the arrest, whether by peace officer or private citizen, is valid, *even though it may later turn out that no felony was committed.*" (Emphasis added.) *Tomlin*, ¶ 19.

██ ¶ 28 "It may be concluded that a seizure has occurred when an officer, by means of physical force or show of authority, in some way restrains the liberty of a citizen." *Leaf v. State*, 1983 OK CR 167, ¶ 9, 673 P.2d 169, 171 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The test is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Id.* In *Leaf*, the Court assumed the appellant was seized when the

---

9. Shaw gives no basis for this argument. City's evidentiary material include Shaw's deposition testimony that he had a current concealed carry permit when the incident occurred. As relevant here, § 1272.1 provides, in part, "... a person possessing a valid handgun license pursuant to the provisions of the Oklahoma Self–Defense Act may carry the concealed or unconcealed handgun into any restaurant or other establishment licensed to dispense low-point beer or alcoholic beverages *where the sale of low-point beer or alcoholic beverages does not constitute the primary purpose of the business.*" (Emphasis added.) However, there is no evidentiary material in the record to support that the subject establishment would meet the qualification in the emphasized portion of § 1272.1.

officer personally asked him to approach the car.

■ ¶ 29 Assuming, like the Court in *Leaf*, that in this case Shaw was "seized" when the officers first grabbed him and put him in arm-bar holds,[10] the question becomes whether it was reasonable at that point for the officers to have acted as they did. *Leaf v. State*, 1983 OK CR 167, ¶ 11, 673 P.2d 169, 171 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). The officer's action *must have been justified at its inception*, and it *must have been reasonably related in scope to circumstances which justified it*. (Emphasis added.) *Id.* "A *crucial factor* is whether the facts available to the officer at the moment of the seizure or search would warrant a man of reasonable caution in the belief that the action was appropriate." (Emphases added) *Id.* (citing *Terry v. Ohio*).

¶ 30 In this case, it is undisputed the officers responded to a call from an off-duty Village police officer at Henry Hudson's pub who overheard Shaw and his friend's conversation, became concerned they were discussing "terroristic acts," reported "the possible crime" to the OKCPD, and requested police to come to the location. Shaw admits these officers have a duty to respond and investigate "if they get a call and they're dispatched to it." The City does not identify the reported "possible crime" as a felony, however, the uncontroverted evidentiary material reveals the information reported to the officers concerned discussions about "shooting up somebody or maybe shooting somebody or something with an AK–47."

¶ 31 We agree City's evidentiary material demonstrates the officers did not know for certain *when they seized Shaw* that he was carrying a weapon in his pocket or that he had been drinking. Lacking that information at the time clearly eliminates City's probable cause argument based on § 1272.1.[11] However, regardless of whether a plan for a terror attack or to shoot someone with an AK–47 is actually a felony under federal or state law, the serious nature of the information communicated to OKCPD by an undisputedly reliable source and then communicated to the police officers is sufficient to warrant 1) reasonable belief Shaw has committed or is committing a felony and 2) the officers' actions in seizing a potentially armed and dangerous arrestee in a public place to protect not only the customers but also the officers themselves. Because the undisputed evidentiary material supports probable cause to arrest or seize Shaw under the specific facts of this case, we find City was entitled to judgment as a matter of law on the claim of false arrest and/or false imprisonment. *See Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. Court of Appeals, 2007).

**AFFIRMED**

BELL, P.J., and JOPLIN, J., concur.

■

---

10. According to Shaw's undisputed deposition testimony, he did not see the officers walk into the Pub. When Shaw was asked to explain "..., what the officers did when they approached [him], what they said to [him] and any physical contact that they had with [him], he responded, "They didn't say anything, they just snatched me off the barstool." He described "snatched" as "They grabbed my arms and the middle of my back and yanked me off of the barstool. And then at that point, they all kind of got a grab of me. They had my left arm in an armbar, my right arm in an armbar, and they just drug me outside. They didn't say anything. I asked what was going on and they just ignored me."

11. City does not argue a potential threat under 21 O.S. 2011 § 1378(C): "Any person who shall devise any plan, scheme or program of action to cause serious bodily harm or death of another person with intent to perform such malicious act of violence whether alone or by conspiring with others, shall be guilty of a felony punishable upon conviction thereof by imprisonment of a period of not more than ten (10) years."